**The People of the State of Illinois, Plaintiff-Appellee, v. Robert Lee King, Defendant-Appellant.**

**Gen. No. 50,363.**

First District, First Division.

October 31, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James Klein and Albert J. Armonda, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Robert Lee King, was indicted for the crime of murder. The jury found him guilty of voluntary manslaughter, a lesser included offense in an indictment for murder and he was sentenced to serve ten to twenty years in the penitentiary.

On appeal the defendant contends that he is entitled to a new trial because: (1) a statement taken after his request for counsel was denied was admitted into evidence; (2) because the court improperly instructed the jury on the law of self-defense; (3) because the court improperly refused to instruct the jury on accidental shooting, and (4) the failure to name the "place of the offense" in the indictment was fatal.

The record establishes that in the early morning hours of September 12, 1964, the defendant and several other men had been playing dice for several hours in a small room located in the building in which the defendant resided. Two of the players testified that after the defendant accused the deceased, James Robertson, of cheating, he left the room. Upon his return he pulled out a gun and ordered the men to leave the room. The defendant and Robertson were then alone and while the other players were in the hallway, a few feet from the room, a shot was heard. The defendant left the room, gave the gun to his wife, and Robertson was found lying wounded

on the floor. The defendant and several of the players brought Robertson to a hospital where they were questioned about the shooting and they denied any knowledge of the affair. Robertson subsequently died as a result of the bullet entering his left lung.

Detective Francis Higgins testified that he and several officers went to the defendant's home the evening of the 12th and, when questioned, the defendant told them he found Robertson lying in the hallway and that he and other persons took him to the hospital. Shortly thereafter the defendant and three of the players were in the police station and, when questioned, the defendant again denied he knew who shot Robertson. Higgins further testified that Burrel Henry, one of the players, told the defendant "You shot that man. Tell him the truth. You shot him," and it was then that the defendant admitted shooting Robertson and giving the gun to his wife. On the way to the defendant's home to get the gun, he said the defendant told them that he and Robertson and others were playing dice, and during an argument about a two-dollar wager, Robertson pushed him and he punched Robertson. When Robertson picked up a board and came at him, he took out his gun, and in the tussel in the hallway, Robertson grabbed for the gun and it went off. When they arrived at defendant's home he said the defendant's wife got the gun and gave it to them and the defendant said this was the gun he used.

He testified further that at the police station he asked the defendant if he would repeat the statement to an Assistant State's Attorney. The defendant said that he wished to consult an attorney first and when asked if he had an attorney he said no, but that he would like to call Mr. Iacullo, his employer. After the defendant spoke to Mr. Iacullo he said he would give a statement. An Assistant State's Attorney came to the station with a court reporter and after the defendant's statement was reduced to writing the defendant refused to sign it because he

said he couldn't read very well. It is this statement that was received in evidence that we are asked to consider.

■ ■ The defendant contends that the conviction rests on a statement taken after a request for counsel was denied in violation of his right to counsel. The defendant's counsel argues that instead of the police adhering to the request of counsel by the defendant "the police officer used the defendant's employer to induce him to give the unsigned statement." The record is clearly to the contrary. The defendant stated he had no lawyer and instead requested permission to speak to Iacullo, his employer. It was after his conversation with Iacullo that he made the statement, which was also substantially the same statement given voluntarily to a police officer before the Assistant State's Attorney was called in. The defendant, as a witness, did not testify to any action by the police that would induce him to involuntarily give a statement and his employer, Iacullo, called by him as his witness, only testified to the defendant's good reputation. We agree with the defendant that in determining whether a statement was voluntarily given and admissible into evidence, all the attending circumstances must be examined. Haynes v. Washington, 373 US 503. The proof is more than sufficient to support the findings of the trial judge that the exculpatory statement made by the defendant was voluntary and that he was adequately informed of his right to counsel. The cases cited by counsel are readily distinguishable and we do not feel that a discussion of those cases will be helpful.

The defendant next contends that the refusal of the court to give the following instruction was prejudicial and denied him a fair trial:

> If the jury believe from the evidence beyond a reasonable doubt that the defendant shot and killed the deceased but that the act of the defendant in doing so was not malicious or intentional but the

result of mere accident, you should find the defendant not guilty.

■ The defendant argues and we agree that he has "the right to have the jury instructed as to the law applicable to any state of facts which the jury might legitimately find to have been proved from the evidence." People v. Kalpak, 10 Ill2d 411, 424, 140 NE2d 726. However, the record is clear that the defendant, with a loaded gun in hand, ordered all the dice players out of the room and was determined to settle his argument with Robertson. The defendant was either guilty of murder or voluntary manslaughter unless the jury believed from the evidence that the defendant fired the gun in self-defense. Instructions relating to voluntary manslaughter and self-defense were given. The trial judge held there was no evidence consistent with accidental death and properly refused the tendered instruction. Moreover, as worded, the instruction is not the law nor has the defendant cited any cases to support it.

■ The defendant also claims that the instruction given on self-defense was erroneous. This instruction informed the jury, amongst other things, "that at the time of the killing the danger was apparently so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing was *absolutely necessary.*" (Emphasis added.) It is argued that this instruction imposed a higher burden than the law required because "the law does not demand that it appear 'absolutely necessary' to the defendant that he kill before he actually does so in order to protect himself." It is true, as defendant points out, that the statute does not use the word "absolutely." The statute uses the word "necessary" and not the words "absolutely necessary." Ill Rev Stats 1963, c 38, § 7–1. The instruction complained of reads as follows:

The court instructs the jury, as a matter of law, that before a defendant can avail himself of the

right of self-defense, as the same is defined in these instructions, it must appear to him, acting as a reasonable person, that at the time of the killing the danger was apparently so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing was *absolutely necessary*. (Emphasis ours.)

In Belt v. The People, 97 Ill 461, the court held this instruction to be proper when a similar objection was made stating that they perceived no essential difference between the respective expressions. In People v. Jordan, 18 Ill2d 489, 492, 165 NE2d 296, our Supreme Court held that "in order that a killing be justified on the grounds of self-defense it must appear that the danger was so urgent and pressing that in order to save the defendant's own life or to prevent his receiving great bodily harm the killing of the other was *absolutely necessary* . . . ." (Emphasis ours.) We have examined the cited cases of People v. Turner, 385 Ill 344, 52 NE2d 712, and People v. Williams, 56 Ill App2d 159, 205 NE2d 749, and find them inapplicable on the facts. Under the facts and circumstances in the case at bar we hold that the instruction as given was proper. When a loaded revolver is chosen to settle a wager dispute, the natural presumption is that there will be shooting if it is found necessary to prevail, and the destruction of human life not infrequently is the result of the reckless discharge of the gun. In fact there was sufficient proof, if believed by the jurors, to justify a conviction of murder, People v. Davis, 35 Ill2d 55, 219 NE2d 468.

Finally it is contended that the indictment contained a fatal defect by not stating the "place of the offense." People v. Blanchett, 33 Ill2d 527, 212 NE2d 97, held to the contrary.

The judgment of the Criminal Division of the Circuit Court will therefore be affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.