**People of the State of Illinois, Plaintiff-Appellee, v. Lonzy Harris, Defendant-Appellant.**

**Gen. No. 53,276.**

First District, First Division.

May 11, 1970.

 █ 

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Defendant was indicted for the crime of murder of one Samuel Green. A jury trial found him guilty of the crime of voluntary manslaughter and the defendant was sentenced to a term of five to ten years in the penitentiary. The defendant seeks to reverse his conviction on the grounds that he was not proven guilty beyond a reasonable doubt and the trial court committed reversible error in an instruction to the jury.

The issue concerning the sufficiency of the evidence requires a review of the record. The facts show that on the evening of March 26, 1966, the deceased, the defendant and a Jimmie McDavid were sitting around a kitchen table in an apartment at 5007 St. Lawrence in Chicago. All three men were drinking beer. The defendant and deceased began to talk loudly, a shot was fired and deceased was mortally shot in the chest.

The State introduced several nonoccurrence witnesses who described the apartment after the shooting. Two female occupants of the apartment testified that the three men had been seated in the kitchen. They later dis-

covered the deceased's body. One of these witnesses heard a noise and after finding the deceased, noticed that the defendant and McDavid had left the apartment. Three police officers testified regarding their investigation of this crime. Two of these officers stated that they searched for the defendant for about one year and finally arrested him in October of 1967, in Portland, Oregon. Coroner's testimony was received by stipulation and established that deceased died as a result of gunshot wound.

The remaining witness was Jimmie McDavid, who was present when the deceased was shot. The witness arrived at the apartment at 5007 St. Lawrence in response to the defendant's invitation to come over and drink some beer. When McDavid arrived, the defendant and two women were present. One of the women asked McDavid to drive her to pick up her son. McDavid and the woman left and then returned. McDavid stated that the defendant and deceased were sitting at the kitchen table, involved in a loud discussion. He asked for some beer and was told to help himself. The witness sat down at the table and the discussion continued. The witness stated he did not remember what they were talking about and he continued to drink his beer. Then the deceased jumped up, followed by the defendant. The witness stated that the deceased approached the defendant, who said to the deceased, "Don't come upon me." Defendant repeated this twice. The deceased took two steps towards defendant who backed up a little. The witness said that defendant then shot the deceased. He was not sure of how the shot was fired, but stated he saw the defendant fire at deceased. McDavid said that deceased fell down and that the defendant ran from the apartment and the witness also left. The witness was not sure if the deceased had anything in his hands when he walked toward the defendant.

On cross-examination, the witness said he sat at the table with defendant and deceased for about five minutes.

236

He admitted he drank about five or six beers before coming to the apartment. McDavid said that he never saw the gun, but only heard the shot. He said he did not see either the defendant's or the deceased's hands. In response to whether he knew who fired the shot, he stated: "Well, I know that Mr. Green got killed." He couldn't recall any of the conversation because he wasn't paying much attention to what happened. McDavid said the deceased and defendant were drinking but was not sure of the extent. He admitted that he didn't notice much until he heard the shot fired.

McDavid stated on redirect that he did not notice the movements of Green and the defendant after they arose from the table. He stated that both men were about an arm's length apart when the shot was fired. He again stated he only heard the shot but did not see the defendant's hands at that time.

Three pictures of the kitchen area of the apartment were introduced into evidence. These photographs showed two views of the kitchen table, the chairs and various objects upon the table. The other photo was a picture of the hallway of the apartment. One of the police officers testified that he inspected the deceased's hands and they were empty. This officer also said there were no weapons found near the deceased.

The defendant's contention regarding the alleged insufficiency of the evidence concentrates on the testimony of McDavid. This witness' testimony is characterized as contradictory and incredulous. Defendant also attacks his creditability because of his admitted drinking on the night in question. The argument is that McDavid's testimony as the only occurrence witness was improbable and conflicting. Defendant argues that when viewing his testimony along with the circumstantial evidence of the other State's witnesses, the proof is insufficient to show his guilt beyond a reasonable doubt. The defendant also asserts that if McDavid's testimony is believed, then it

was established that the defendant acted in self-defense in killing Green. The State responds by stating that any inconsistencies in McDavid's testimony are minor and that the evidence as a whole established defendant's guilt beyond a reasonable doubt. The State points out there was substantial circumstantial evidence, including the fact that defendant took flight after the homicide. Finally, with regard to the self-defense aspect, the State argues that the evidence disclosed that the defendant acted unreasonably in defense of his person.

■ In the case of People v. Widmayer, 402 Ill 143, 83 NE2d 285 (1949), the Supreme Court stated, at page 146:

> "It is the rule with reference to the sufficiency of circumstantial evidence to convict, that it must be of a conclusive nature and tendency, leading on the whole to a satisfactory conclusion. It must produce a reasonable and moral certainty that the accused and no one else committed the crime. His guilt must be so thoroughly established as to exclude every other reasonable hypothesis."

This same principle has been expressed by this court in the case of People v. Jackson, 98 Ill App2d 296, 240 NE2d 482 (1968). At page 302 of that case this significant addition was stated: "the trier of fact is not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt."

■■ On the basis of the principles set forth we hold that the defendant's guilt was proved beyond a reasonable doubt. The evidence showed his presence at the scene when Green was shot. It was further proved that defendant took flight after the homicide and was arrested more than a year later in Portland, Oregon. Evidence of flight is a circumstance to be considered in determining the guilt or innocence of an accused. People v. White, 99

Ill App2d 270, 240 NE2d 342 (1968). McDavid's testimony clearly established that a shot was fired and the evidence showed a fatal wound was inflicted upon the deceased. We are of the opinion that the only reasonable hypothesis was that the defendant fired the fatal shot. The fact that McDavid did not see defendant fire the shot does not destroy his testimony. His statements of his lack of attentiveness at the kitchen table and the witness' admission that he had been drinking were factors affecting the weight and creditability of the evidence. The determination of the jury should not be overturned under these circumstances.

■ Similarly, defendant's argument of self-defense is not well taken. The record shows only that Green advanced towards the defendant but was not seen with a weapon, nor was one found near his body. Yet the evidence shows that defendant used deadly force against the deceased. We believe that this clearly shows that defendant acted under an unreasonable belief at the time of the killing which justifies his conviction for voluntary manslaughter. Ill Rev Stats, c 38, § 9–2(b) (1967).

■ The second issue concerns the alleged denial of a fair trial based upon the trial court's alleged error in instructing the jury. The instruction in question was the State's Instruction No. 12, which stated:

"The court instructs the jury, as a matter of law, that before a defendant can avail himself of the right of self-defense, as the same is defined in these instructions, it must appear to him, acting as a reasonable person, that at the time of the killing the danger was apparently so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily harm, the killing was *absolutely* necessary." (Emphasis ours.)

The defendant complains that inclusion of the word "absolutely" in the instruction misstates the statutory law

239

of self-defense and interjects the retreat requirement into the right of self-defense. Further, defendant contends that his instruction placed an impractical burden of certainty to justify the use of self-defense.

The statute does not contain the term "absolutely" in describing the belief necessary for one to use force against another. The statute only uses the term "necessary." Ill Rev Stats, c 38, § 7–1 (1967). Despite this deficiency, this court found no error in the giving of an identical instruction in People v. King, 76 Ill App2d 354, 222 NE2d 88 (1966). In King, the defendant argued that the term "absolutely necessary" imposed a higher burden to prove self-defense. The court rejected that argument. In this case, those same reasons are appropriate for rejecting the defendant's argument that this instruction caused an impractical burden to justify the right of self-defense.

Furthermore, there is no merit in defendant's assertion that using the term "absolutely" required retreat as an element of self-defense. The State has cogently pointed out that Illinois has not required retreat for the right to self-defense since the case of Hammond v. People, 199 Ill 173, 64 NE 980 (1902). Thus, the elimination of the word "absolutely" from the definition of self-defense in the revision of the Criminal Code had no relevance to the retreat requirement, as defendant has argued. The revision occurred in 1961. Ill Rev Stats, c 38, § 7–1 (1961). The committee comments to this section do not disclose that the deletion of the word "absolutely" had any connection with the retreat requirement.

Therefore, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.