Patrick Walsh, Plaintiff-Appellee, v. Dream Builders, Inc., an Illinois Corporation, Defendant, and Sigmund Levin and Morris Rapoport, a Partnership, Doing Business as Sim Construction Company, Defendants-Appellants.

Gen. No. 52,859.

First District, Fourth Division.

August 5, 1970.

Rehearing denied and opinion modified November 25, 1970.

Vogel & Vogel, of Chicago, for appellants.

J. M. Duffy, of Chicago, for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court as modified on denial of petition for rehearing.

Plaintiff, Patrick Walsh, brought suit against Dream Builders, Inc. and Sigmund Levin and Morris Rapoport, doing business as Sim Construction Company, to recover damages for personal injuries which he had sustained. He charged both companies with violation of the Structural Work Act (Scaffold Act). Dream Builders, in turn, filed a counterclaim against Sim Construction, hereinafter referred to as defendants, and against plaintiff's employer, Carney Plastering Company. During trial, Dream Builders paid $6,500 to plaintiff, was voluntarily dismissed from the action and dismissed its counterclaim against defendants and Carney. Defendants' motions for a directed verdict at the close of plaintiff's case and at the close of all the evidence were denied, and the jury returned a verdict in favor of plaintiff and against defendants in the amount of $15,000. The verdict was subsequently reduced to $8,500 in order to reflect the settlement with Dream Builders, and judgment was entered

in the reduced amount. Defendants' post-trial motions were denied, and they appeal.

Plaintiff was injured as the result of an accident which occurred on December 19, 1960. At the time of the accident, plaintiff, a plasterer's helper for Carney Plastering Company, was engaged in plastering work at a two-apartment building under construction at 6747 North Artesian Avenue in Chicago. Dream Builders was the general contractor on the construction, and defendants were the carpentry subcontractors.

Plaintiff's injuries were sustained when a temporary stairway at the jobsite collapsed as he stepped on it. The stairway was built like a ladder and was the only means of ingress and egress between the landing and the first floor. The stairway was about five feet in length, with four steps. The steps and stringers consisted of two-by-ten boards, were ten inches wide, and were about fourteen inches apart. There were no handrails or back supports.

Plaintiff's duties were to mix plaster outside of the building and to bring the plaster on a hod to the two plasterers inside the building. When full, a hod weighed between 85 and 100 pounds, and normally plaintiff would carry a few hundred loads of plaster each day. At about 4:00 p. m. on the day of the accident, plaintiff carried a load of plaster up to the second floor. After dumping it, he came down from the second floor to the first. As soon as he stepped on the temporary stairway leading from the first floor, the first step gave way and knocked down the other steps. The steps did not break in any way. Rather, the nails gave way and were pulled out by the stringers.

Richard Stalzer, an engineer, testified as an expert witness for plaintiff that he was familiar with all phases of building construction, including temporary stairways. Such stairways should be built in accordance with cer-

tain minimum standards. In his opinion, the stairway in question did not meet those standards. The distance between the risers was excessive; there was a failure to put in riser supports; and the cleats supporting the steps were of insufficient thickness. As a result, the nails would lose their holding power and the stringers would move laterally. Therefore, the tread would move away from the stringer and would have a tendency to collapse. Stalzer also testified that removal of the stairway and its replacement, using the same nail holes, would weaken the device and that this was bad practice.

Plaintiff and Herbert Bailie, one of the plasterers on the job, testified that when they arrived at the building to start work, everything including the temporary stairway, had been set up for them. They did not know who constructed or installed the stairway. At some jobs, it was necessary for them to construct such a stairway themselves, or use a regular ladder. Ordinarily, the temporary stairway would consist of two-by-four boards, rather than the heavier two-by-tens found on this stairway. Plaintiff also testified that he and the plasterers had moved the stairway once during the course of their work in order to plaster behind it. This had occurred about 1½ days prior to the accident. He further testified that they only removed the nails holding the stairway to the building structure. They did not touch any of the nails in the steps of the stairway.

Only plasterers were working at the building at the time of the accident. Under the construction contract, defendants' work was interrupted to allow the lathers and plasterers to complete their part of the construction. Accordingly, the carpenters who had been working throughout November stopped work on December 10 and returned to the job on January 4, 1961. After defendants' employees left the instant job on December 10, the lathers completed their work, and on December 15, plaintiff and two plasterers started their work.

Francis Carney, plaintiff's employer, was called as a witness by plaintiff, and testified that neither he nor any of his workers installed the stairway. After he testified further that he did not know who had installed it, the trial court found him to be a hostile witness and permitted counsel for plaintiff to question him about a prior inconsistent statement made at a discovery deposition prior to trial. At that deposition, Carney had stated that the stairway was erected by the carpenters. He subsequently stated at the deposition that he understood that the stairway was erected by the carpenters, and that usually it was carpenters' work.

Carney subsequently testified that he also was the lathing contractor on the job, and had subcontracted the lathing work. Prior to the injury to plaintiff, he had inspected the jobsite. He visited the premises before the lathers commenced work and also while they were on the premises. At those times, he used the temporary stairway to get to the first floor. Carney further testified that it was the same stairway which his plastering employees were going to use in their work. He found the stairway to be secure and solid. In his opinion, the lumber used on the stairway was so heavy that it would require the use of an electric saw and ruler for its construction. He repeated that he did not know who installed the stairway in question, but stated that it was carpenters' work.

Morris Rapoport, a partner of defendants, testified as an adverse witness that he supervised the carpentry work on this job. His men had erected two temporary stairways for this construction, one running to the first floor and one to the second floor. The stairways were constructed by his men on the premises. When his carpenters temporarily stopped work in December, one of his employees took both stairways from the jobsite. Rapoport was present when this was done. When his carpenters returned to complete their work in January, there were no stairways present on the premises.

Benjamin Weiss, an officer of Dream Builders, testified as an adverse witness that as general contractor, he visited the premises occasionally. He never saw the stairway in question. It was his practice to have each trade bring its own equipment and remove it when their work was done. He also testified that carpenters ordinarily did not install temporary stairways for the use of other trades.

On appeal, defendants contend that the trial court erred in not entering judgment in its favor, since plaintiff failed to prove that defendants had violated the Scaffold Act. In the alternative, defendants argue that they are entitled to a new trial because the verdict was against the manifest weight of evidence, that the trial court committed reversible error in allowing Carney to be cross-examined by plaintiff as a hostile witness, and that the trial court committed prejudicial error in denying defendants' motion for a mistrial after certain remarks made by plaintiff's counsel.

■ For liability to attach under the Scaffold Act, Ill Rev Stats c 48, §§ 60–69, it must be shown that defendants were in charge of the work within the meaning of the Act, or if defendants were not in charge of the work, that defendants erected the defective stairway in question: Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247 (1965). Plaintiff concedes in the instant case that defendants were not in charge of the work. Consequently, we need only consider whether there was sufficient proof that defendants erected the stairway on which plaintiff was injured, and whether the proximate cause of plaintiff's injuries was the defect in the stairway.

■ Verdicts should be directed and judgments notwithstanding the verdict entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors

286

movant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967). A fact may be proved by circumstantial evidence. Busch v. United States Fire Ins. Co., 66 Ill App2d 435, 213 NE2d 584 (1966). The Illinois Pattern Instructions, IPI 1.03, define circumstantial evidence as proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved. It is the function of the jury to determine the facts, disputed as well as undisputed, and to make reasonable inferences therefrom. Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717 (1957). And in Finley v. New York Cent. R. Co., 19 Ill2d 428, 167 NE2d 212 (1960), the court stated at p 436:

> "The fact that contrary inferences would be equally supported by the evidence is not sufficient to show unreasonableness of the verdict. It is the jury's function to weigh contradictory evidence, judge the credibility of the witnesses and draw the ultimate conclusion as to the facts. Its conclusion, whether relating to negligence, causation, or any other factual matter should not be set aside merely because different conclusions could be drawn or because judges feel that other results are more reasonable."

■ Although the evidence as to the construction of the temporary stairway was entirely circumstantial, we find that it was sufficient to support the jury's determination that defendants had constructed and installed the stairway upon which the accident happened. It is conceded that defendants' employees had constructed two such stairways upon the premises when they commenced the carpentry work. The one stairway constructed and used by the carpenters was located at the situs of the

accident. The construction of the stairway in question required the use of special tools, and these special tools ordinarily would be used only by carpenters. The stairway was already in place when plaintiff and his fellow employees commenced their plastering work. And most significantly, Carney, plaintiff's employer, testified that he visited the jobsite prior to the accident while the carpenters were still on the premises and also while his lathing subcontractor was working. During these visits, he used the temporary stairway running to the first floor, and testified that it was the same stairway which his plastering employees were going to use. He also stated that the installation of such a stairway was carpenters' work. From all these facts and circumstances, if the triers of fact were to disbelieve the testimony to the contrary, they could reasonably determine that the temporary stairway in question was constructed and installed by defendants.

In Reed v. Johnson, 55 Ill App2d 67, 204 NE2d 136 (1965), a case factually similar to the instant case, the court, in affirming judgment for the plaintiff, stated at p 72:

"Appellants argue that the evidence establishes that they had previously removed all the scaffold along the east wall and that the verdict is therefore against the manifest weight of evidence. The three defendants, two of their employees and the owner of the building testified that all of the east wall scaffold was taken down before the steel workers came in. Defendants urge that if someone else borrowed their scaffold materials which were still on the job and put the scaffold up again, they should not be liable for the injury received by plaintiff. On the other hand, plaintiff's witnesses, Wilson, Morgan and Anderson and the plaintiff himself, all testified that the scaffold was standing by the east wall when they arrived. It is suggested that since defendants

had the responsibility of patching the wall around the ends of the bar joists, they had reason to leave portions of the scaffold in place. We believe that this was a fact question properly left to the jury, and the jury's verdict indicates that they resolved the question in favor of the plaintiff and we see no occasion to disturb that finding.

"The recent decision of Lawler v. Pepper Const. Co., 33 Ill App2d 188, 188 NE2d 687, involves a somewhat similar factual situation. In neither case was there proof that any other person reconstructed the scaffold, and since it was there at the time of injury, it is reasonable to infer that it was left in place by defendants."

And in Busch v. United States Fire Ins. Co., 66 Ill App2d 435, 213 NE2d 584 (1966), plaintiff, a young boy, was discovered upon insured's premises with his clothes on fire. The owner of the property, the insured, testified that earlier in the day he started a fire in his incinerator. Judgment was entered for plaintiff, and on appeal the defendant insurance company contended that the evidence failed to prove the injuries were received on insured's premises. In affirming the judgment, the court stated at p 439:

"There is no direct evidence as to what caused the boy's clothing to catch fire and where he was when it did. The evidence is circumstantial. Circumstantial evidence, however, has long been accepted as sufficient to support either a jury's verdict or the finding of a judge."

Defendants argue that Rapoport's testimony that his employees removed the stairway from the premises when they temporarily ceased their work was unimpeached, and therefore could not be rejected by the jury. In making this argument, defendants cite Larson

v. Glos, 235 Ill 584, 85 NE 926 (1908), which held that a jury wilfully or out of mere caprice may not disregard the testimony of an unimpeached witness. However, in the case at bar, Rapoport's testimony was contradicted by the circumstantial evidence, and could reasonably be disregarded by the triers of fact. It should also be noted that the carpenters were leaving the premises only temporarily, and did in fact return to resume their work just two weeks after the accident.

Defendants next contend that even if it could be determined that the temporary stairway was constructed by them, plaintiff still failed to prove them guilty of a violation of the Scaffold Act. They argue that the proximate cause of plaintiff's injuries was his own act of moving the stairway during the plastering work, rather than any defect in the construction of the stairway.

However, in Oldham v. Kubinski, 37 Ill App2d 65, 185 NE2d 270 (1962), the court stated at p 88:

> "What is the proximate cause of the injury here, as in most cases where it is in issue, is ordinarily a question of fact for the jury, to be determined from a consideration of all of the attending facts and circumstances."

 The testimony of plaintiff was to the effect that about 1½ days before the time of the collapse of the stairway, he and the plasterers moved the stairway. However, in making this move, they removed only the nails holding the structure to the building. They did not touch any of the nails in the steps of the stairway. This testimony of the plaintiff was supported by the fact that the step did not break at the time of the collapse. It was also supported by the evidence of the expert witness, whose expertise is not challenged by defendants. The expert witness testified that the stairway was constructed improperly in several respects, that the improper construction rendered the stairway dangerous. As

a result of the defects in construction, he testified that the stairway would have a tendency to collapse. He also testified that the removal of the stairway and its replacement, using the same nail holes, would weaken the device and that this was bad practice. Thus, it was for the jury to determine whether the defects in the construction of the stairway caused the injuries to the plaintiff, and their determination is conclusive.

■ Defendants next contend that, in the alternative, they should have been granted a new trial because the verdict was against the manifest weight of the evidence. In light of our view of the evidence as discussed above, we find that the trial court properly denied defendants' motion for a new trial.

Defendants also contend that the trial court committed reversible error in permitting plaintiff to cross-examine his own witness as to a prior inconsistent statement. During trial, plaintiff attempted to call Carney, his employer, as an adverse witness under section 60 of the Civil Practice Act. Plaintiff pointed out to the trial court that defendants had brought an indemnity action against Carney, and the latter's interests were adverse to plaintiff. The judge would not permit Carney to be called as an adverse witness since he was not a party to the principal suit. However, the court noted that he was concerned about the possible hostility of the witness to plaintiff. Carney was then called as a witness by plaintiff. He was asked who had installed the stairway, and replied that he did not know. After a conference, the trial judge, pursuant to Supreme Court Rule 238, Ill Rev Stats 1969, c 110A, § 238, permitted counsel for plaintiff to cross-examine Carney as to a prior inconsistent statement made by him at a discovery deposition, wherein he had stated that the carpenters installed the stairway.

■ While ordinarily a party cannot impeach his own witness, if a party's witness unexpectedly gives testi-

mony at variance with an earlier statement, the party calling the witness has the right to call the attention of the witness to such statement for the purpose of refreshing his memory. McCray v. Illinois Cent. R. Co., 12 Ill App2d 425, 139 NE2d 817 (1957). And in Reed v. Johnson, supra, a witness called by plaintiff testified that the planks used on the scaffold were sixteen feet long. He had testified at a discovery deposition a week before that the planks were eight feet long. Plaintiff's counsel advised the court that he was surprised by the testimony and the trial court permitted plaintiff's counsel to question the witness as to his deposition testimony. In affirming the judgment, this court held that the action of the trial court was proper.

 It seems obvious that plaintiff was surprised by Carney's testimony regarding the construction of the stairway. We therefore hold that the trial court properly permitted plaintiff to question Carney as to his deposition testimony, and correctly denied defendants' motion to strike that testimony. In so holding, we recognize, and plaintiff concedes, that the examination of a witness, who is not a party to the suit, as to a prior inconsistent statement could be used only for impeachment or to awaken his conscience, and would not of itself constitute substantive proof that defendants' employees installed the stairway. See Guthrie v. Van Hyfte, 36 Ill2d 252, 222 NE2d 492 (1966).

Finally, defendants contend that the trial court committed reversible error in not allowing their motions for a mistrial. In counsel for plaintiff's opening statement, he stated that plaintiff had a wife and two children. On direct examination, he asked plaintiff whether he was married. Defendants' objections were sustained in both instances, but defendants' motions for a mistrial were denied.

292

Undue emphasis on the fact that an injured party has a family dependent upon him for support could be reversible error. McCarthy v. Spring Valley Coal Co., 232 Ill 473, 83 NE 957 (1908). However, in Brayfield v. Johnson, 62 Ill App2d 59, 210 NE2d 28 (1965), during closing argument, plaintiff's counsel informed the jury that plaintiff had a wife and family. This court, while stating that the domestic circumstances of the parties were irrelevant in a suit for personal injuries, held that only where it appears that the trial judge abused his discretion and that the jury had been misled by the improper remarks would the verdict be set aside on that ground.

 In the instant case, the remarks were not unduly emphasized by plaintiff's counsel. Moreover, the trial court promptly sustained defendants' objections to the remark and question, and found that the defendants' case had not been prejudiced by the remark. We do not believe that the trial court abused its discretion in denying defendants' motion for a mistrial.

Accordingly, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

STAMOS, P. J. and ENGLISH, J., concur.