MICHAEL McDONNELL *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)    No. 80-1228

Opinion filed December 14, 1981.—Rehearing denied January 18, 1982.

D. Kendall Griffith and Joseph J. O'Connell, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and Stanley Garber, Corporation Counsel, both of Chicago (Robert R. Retke and Maureen J. Kelly, Assistant Corporation Counsel, of counsel), for appellants.

Morris W. Ellis, of Chicago, for appellees.

JUSTICE McGLOON delivered the opinion of the court:

Plaintiff Michael McDonnell filed an action for damages for injuries sustained in an altercation with defendant Fred McKinley, a police officer employed by defendant city of Chicago and as a security guard for defendant McCormick Inn Corporation. The jury returned a verdict in favor of plaintiff and against all defendants and awarded plaintiff $225,000 in damages. Defendants appeal.

On appeal, all defendants contend that plaintiff's counsel improperly implied that McKinley was intoxicated and that the trial court erred in excluding from evidence plaintiff's dramshop complaint. McCormick Inn Corporation also contends that (1) the trial court erred in denying its motion for a judgment notwithstanding the verdict; (2) plaintiff's argument to the jury that McCormick Inn improperly supervised McKinley was prejudicial because the matter was not an issue; (3) plaintiff's references to his domestic situation were improper and prejudicial; (4) excerpts from a transcript of McKinley's extrajudicial statement erroneously were read to the jury; and (5) the conduct of plaintiff's counsel deprived McCormick Inn of a fair trial. The city of Chicago also contends that the trial court erred in refusing an instruction based on the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—109 and 2—202).

We affirm.

At approximately 9:30 p.m. on November 10, 1973, plaintiff Michael McDonnell, his wife, and several friends went to a cocktail lounge at the McCormick Inn. They left the lounge at 11:30 p.m. Plaintiff testified that as he and his wife waited in the parking area for their car, he was bumped by McKinley and pushed into a column. McKinley continued walking and plaintiff stated, "Why don't you watch where you're going?" McKinley turned and told plaintiff that he was a Chicago police officer and worked at the Inn. He stated that plaintiff was under arrest. McKinley then drew his gun and threatened to shoot plaintiff. When McKinley repeated the threat, plaintiff's wife ran into the hotel lobby to seek assistance. McKinley began firing his gun and plaintiff was struck in his leg. Bystanders disarmed McKinley after he fired two or three shots. Plaintiff further testified that he neither struck nor antagonized McKinley. He consumed four or five drinks while in the lounge, but was not intoxicated.

Patricia McDonnell, plaintiff's wife, testified that after plaintiff was bumped by McKinley, plaintiff told McKinley to watch where he was going. McKinley stated that he was a police officer, that he worked for McCormick Inn and that plaintiff was under arrest. McKinley was shouting profanities and threatened to shoot plaintiff. Mrs. McDonnell sought assistance and upon returning to the scene heard a number of shots. Her husband did nothing to provoke McKinley's conduct. On cross-examination, Mrs. McDonnell could not recall telling the assistant State's Attorney that her husband was intoxicated on the evening in question or that her husband and McKinley were "actually going to fight."

Plaintiff's witness Daniel Comm witnessed the altercation. As he waited in line at the parking cashier, he saw McKinley pointing a pistol at plaintiff and heard McKinley shouting obscenities. Unaware that McKinley was a police officer, Comm ran behind McKinley, pulled him to the ground, and struggled to keep the gun pointed away from bystanders. While both men were on the ground, the gun fired four times. Comm's wife tried to wrench the gun from McKinley's hand, but another man came to Mrs. Comm's assistance and took the gun from McKinley.

Edmond Hanley and his wife accompanied the McDonnells to the McCormick Inn. Hanley testified that they were waiting in the lobby when plaintiff and his wife went outside to the parking area. Moments later, Mrs. McDonnell ran into the lobby and shouted that someone was about to shoot her husband. Hanley went to the parking area and heard McKinley say "I'm going to blow your * * * brains out." Upon hearing the gun fire, Hanley dropped to the ground. He had three or four drinks that evening. He neither threatened nor ran toward McKinley.

Defendant Fred McKinley was called as an adverse witness. He

testified that on the date of the occurrence, he was employed as a Chicago police officer and a security guard for McCormick Inn. He had been a policeman for eight years and a security guard for two years. As he left the Inn at the end of his shift as security guard he heard plaintiff say "good-bye, nigger." McKinley told Mrs. McDonnell to take her husband home because he might get arrested. Plaintiff then charged McKinley and struck McKinley three or four times. McKinley told plaintiff he was under arrest after plaintiff struck McKinley the first time. McKinley further testified that he drew his revolver only after plaintiff and Hanley began approaching and threatening him. At this same time, he announced that he was a police officer. Moments later, he was grabbed by Daniel Comm. As he and Comm fell to the ground, a number of people charged at him. McKinley fired his gun, trying to expend the ammunition. He feared that someone would take the weapon from him and use it to shoot him. Although the first shot was fired in the direction of plaintiff, McKinley did not intentionally aim the revolver in plaintiff's direction. He tried to aim the remainder of the shots toward the ceiling.

McKinley was also called to testify as a defense witness. His testimony was substantially similar to that noted above. Additionally, he testified that the incident occurred after he had checked out at midnight.

Paul Froelich, a defense witness, testified that as he waited in line near the parking cashier, he heard plaintiff and McKinley arguing. He saw McKinley draw his gun. Shortly thereafter, Comm grabbed McKinley and the men fell to the ground. Plaintiff jumped McKinley and the gun fired. Froelich approached the three men and twisted the gun from McKinley's hand.

Bruce Wexler, the general manager of McCormick Inn during 1973, testified he saw plaintiff and McKinley surrounded by a crowd of people in the parking area. Plaintiff and McKinley were talking loudly and plaintiff struck McKinley. McKinley drew his revolver, announced his office and stated that plaintiff was under arrest. Wexler also heard McKinley say he would "blow [plaintiff's] * * * head off." A man from the crowd forced McKinley to the ground. McDonnell jumped both men. Wexler then heard three or four gunshots. Two security guards from the Inn intervened and stopped the men from fighting. During the incident, Wexler noted that plaintiff was weaving and intoxicated.

Susan Bouchey was at McCormick Inn on the evening in question. While in the parking lot waiting room, a man staggered past her group and asked if anyone wanted to dance. The man crossed the driveway, and she later saw him in front of a crowd of people. Another man was aiming a gun at him, and the men were shouting. As Bouchey drove from the Inn, she heard gunfire.

Howard Pierson, the Inn's security consultant, testified he recommended that the Inn hire McKinley as a security guard. Pierson had been a police commander for eight years prior to becoming a security consultant and had worked with McKinley during that time. He recommended McKinley for the security guard position because McKinley had been a good police officer. Most of the men hired by the Inn as guards were police officers. They worked at the Inn while off duty.

First, all defendants cite as error the attempt by plaintiff's counsel to imply that McKinley was intoxicated. During direct examination, plaintiff was asked whether he had seen McKinley in the Inn prior to the altercation. Plaintiff responded he had seen McKinley sitting in the lounge. When counsel asked if plaintiff could see whether McKinley was drinking, defense counsel for the Inn objected on the ground that the question was leading. The trial court sustained the objection and ordered the question stricken.

McCormick Inn additionally contends that plaintiff's attempt to elicit Comm's opinion on McKinley's state of sobriety constituted prejudicial error. During direct examination of Comm, counsel attempted to lay the foundation for the admission of Comm's opinion. Comm was asked whether McKinley appeared intoxicated, but defense counsel objected on the ground that a proper foundation had not been laid. Here again, the trial court sustained the objection. Plaintiff abandoned the topic.

We find that the prejudice, if any, in counsel's attempt to show that McKinley was intoxicated was cured by the sustaining of defendant's objection. (*Hirn v. Edgewater Hospital* (1980), 86 Ill. App. 3d 939, 408 N.E.2d 970; *Department of Public Works & Buildings v. Mitchell* (1974), 19 Ill. App. 3d 1083, 312 N.E.2d 691.) We further note that counsel for the Inn raised the question of McKinley's drinking when, during cross-examination of plaintiff, he asked if plaintiff could say that McKinley had an alcoholic drink. Plaintiff then stated he did not know what McKinley was drinking. Thus, defendants were able to cure any prejudice which might have occurred during direct examination of plaintiff.

All defendants contend that the trial court erred in excluding from evidence allegations in plaintiff's dramshop complaint against McCormick Inn. They maintain that because of the sharp conflict in evidence regarding plaintiff's sobriety, they should have been permitted to read the allegations of the dramshop complaint stating that plaintiff was intoxicated as a result of consuming alcoholic beverages at the Inn.

■■ However, the dramshop complaint was neither signed nor verified by plaintiff. Generally, unsigned complaints cannot be used for impeachment or as admissions against interest of a party thereto in another action based on the same incident. (See *Allen v. City of Ottawa* (1980), 80 Ill. App. 3d 1032, 400 N.E.2d 629.) Without a verification there is no evidence

that the party authorized or confirmed the truth of the allegations. We therefore find that the trial court did not err in excluding from evidence the allegations of the dramshop complaint.

Assuming *arguendo* that the dramshop complaint was admissible, its exclusion would not require reversal. The allegations contained therein regarding plaintiff's intoxication would have affected only the weight and credibility accorded plaintiff's testimony. (*King v. Corsini* (1975), 32 Ill. App. 3d 461, 335 N.E.2d 561; *People v. Harris* (1970), 124 Ill. App. 2d 234, 260 N.E.2d 325.) The record is replete with testimony bearing on this point. Plaintiff himself admitted consuming several drinks while at the Inn. Thus, the jury had ample evidence from which to determine plaintiff's credibility and any error, if any, in excluding the evidence was harmless error.

McCormick Inn contends that as a matter of law McKinley was not acting within the scope of his employment as a security guard at the time of the altercation and that the trial court therefore erred in denying its motion for judgment notwithstanding the verdict. The Inn characterizes the altercation as a personal matter between plaintiff and McKinley and concludes that McKinley was not acting within the authorized scope of his duty to protect patrons and property of the Inn. Alternatively, the Inn argues that McKinley was not acting in his capacity as security guard because he had checked out prior to the incident.

■■ Under the doctrine of *respondeat superior*, the negligence of an employee is imputable to the employer. (*Bolwin v. El Kay Manufacturing Co.* (1975), 32 Ill. App. 3d 138, 336 N.E.2d 502.) The doctrine is applicable where an employee is acting within the scope of his employment with respect to the transaction or occurrence from which the injury arose. (*Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 383 N.E.2d 1242; *Bolwin.*) Generally, the issue of whether an employee is acting within the scope of his employment is decided by the trier of fact. *Wallace v. Smith* (1979), 75 Ill. App. 3d 739, 394 N.E.2d 665; *Torrence v. DeFrates* (1978), 56 Ill. App. 3d 118, 371 N.E.2d 1281.

In *Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 383 N.E.2d 1242, and *Sauer v. Iskowich* (1967), 80 Ill. App. 2d 202, 224 N.E.2d 21, the courts utilized section 229 of the Restatement (Second) of Agency (1958) to determine whether an employee's conduct fell within the scope of employment. Section 229 provides as follows:

> "Kind of Conduct within Scope of Employment
>
> (1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.
>
> (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct

authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

* * *

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; * * *."

Restatement (Second) of Agency §229 (1957).

In determining whether the trial court erred in denying the Inn's motion for judgment notwithstanding the verdict, the *Pedrick* standard should apply. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) This standard requires a verdict be entered in favor of the movant if the evidence, when viewed most favorably to the non-movant, so overwhelmingly favors the movant that no contrary verdict could stand.

■■ In this case, sufficient facts and circumstances exist from which the jury could conclude that McKinley was acting within the scope of his employment as a security guard. McKinley's responsibilities included quelling disturbances on the premises. His acts during the altercation were substantially similar to those authorized by the Inn and were, at the very least, not unexpectable in view of his responsibilities as a security guard. (See Restatement (Second) of Agency §245 (1958).) The incident occurred on the premises of the Inn. Also, the Inn knew that McKinley carried his revolver while on duty. While there is some evidence that McKinley may have been off duty, there is also evidence that the incident occurred prior to midnight, the hour at which McKinley stated he was off duty. Nevertheless, where the time is not too remote from that authorized, a master may still be liable. (Restatement (Second) of Agency §245, comment (d), at 540 (1958).) Furthermore, there is evidence that prior to the altercation, McKinley told plaintiff he was a security guard for the Inn.

The Inn has cited *Korhorn v. Smith* (1971), 3 Ill. App. 3d 532, 278 N.E.2d 864, and *Bolwin v. El Kay Manufacturing Co.* (1975), 32 Ill. App. 3d 138, 336 N.E.2d 502, in support of their contention that McKinley was not acting within the scope of his authorized duties. In *Korhorn* plaintiff and defendant's employee engaged in a fist fight on a work site. The court found that because the fight resulted from personal animosities and defendant's employee had completed the task assigned, defendant's employee was not about his employer's business. The court therefore held that the employer was not liable. In *Bolwin*, plaintiff's truck was being loaded by defendant's employee. Defendant's employee struck plaintiff. In affirming the directed verdict for defendant, the court noted that no evidence was introduced connecting the attack with some function the employee performed for his employer. However, the acts giving rise to the causes of action in *Korhorn* and *Bolwin* were substantial deviations from the authorized acts of employment. Here, as noted above, McKinley's acts were similar to those authorized and incidental to his employment as a security guard.

We find that under the facts and circumstances of this case, the decision of whether McKinley was acting within the scope of employment properly was within the province of the jury. The trial court therefore did not err in denying the Inn's motion for judgment notwithstanding the verdict.

■■ McCormick Inn further contends that portions of plaintiff's closing argument were improper and prejudicial. It points to the arguments that McCormick Inn improperly supervised McKinley, thereby failing to protect its patron, that McCormick Inn was liable because it allowed security guards to carry weapons, and that it was liable because its manager Wexler improperly supervised McKinley and made no attempt to halt the altercation.

The Inn's liability was predicated on the doctrine of *respondeat superior*, and the jury was instructed accordingly. Thus, the issues to be resolved by the jury were limited to this theory. No instructions regarding negligent supervision were tendered or given. The arguments cited above were therefore improper because they went beyond the issues presented. (*Sisti v. Barker* (1979), 70 Ill. App. 3d 734, 388 N.E.2d 1117.) However, in its answer to the special interrogatory, the jury found that McKinley was acting within the scope of his employment at the Inn. In our opinion, this answer was unaffected by counsel's improper remarks and thus the error was harmless. *Houck v. Martin* (1980), 82 Ill. App. 3d 205, 402 N.E.2d 421.

McCormick Inn further argues that it was prejudiced by repeated references to plaintiff's children and is therefore entitled to a new trial. The first reference occurred during plaintiff's opening statement, where counsel stated that plaintiff had a wife and children. The second

reference occurred during direct examination of plaintiff when plaintiff volunteered the fact that he had hired a babysitter on the evening in question. Third, plaintiff's wife stated during direct examination that she, plaintiff, and their friends left the Inn at 11:30 because they had to relieve the babysitter that evening. Defendant's objections to each of these remarks were sustained and the jury instructed to disregard the references to plaintiff's children.

■■ Generally, evidence of a party's domestic circumstances is irrelevant in actions such as this where a plaintiff is seeking compensatory damages for personal injuries. (*Pearson v. Ford Motor Co.* (1975), 32 Ill. App. 3d 188, 336 N.E.2d 528.) But where plaintiff's dependent family is not unduly emphasized and the trial court promptly sustains objections, no reversible error occurs. (*Walsh v. Dream Builders, Inc.* (1970), 129 Ill. App. 2d 280, 264 N.E.2d 247.) Here, all references were brief and plaintiff's family was not unduly emphasized. Every objection to the matter was sustained. We therefore find that the prejudice, if any, to defendant was minimal, and the trial court did not abuse its discretion in denying defendant's motions for a new trial on this ground.

McCormick Inn further contends that it was error for plaintiff's counsel to read, during closing arguments, portions of McKinley's statement which were used during trial for impeachment purposes. The Inn maintains that in doing so, counsel used the statement as substantive evidence. The statement was given by McKinley shortly after the incident.

However, plaintiff's counsel did nothing more than review that part of the trial wherein McKinley's testimony was impeached. He read the pertinent parts of the statement and stated, "And on the stand [McKinley] denied or couldn't recall making these statements." Counsel did not represent the statement as substantive evidence, and we therefore find the Inn's contention to the contrary is without merit.

■■ Finally, the Inn contends that plaintiff's counsel engaged in a variety of improper and prejudicial conduct which deprived it of a fair trial. Its brief recites lengthy colloquys which, in the Inn's opinion, support the contention. However, there are no citations of authority. Appellant is required not only to offer argument, but also to support that argument with some citation of authority. (*Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 418 N.E.2d 56.) Failure to cite authority has been held to constitute a waiver of the issue on review. *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664; *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.

Nevertheless, the question of whether a party has been denied a fair trial due to misconduct of opposing counsel is generally left to the trial court's discretion and absent an abuse of discretion, its ruling will be upheld. (*Ferenbach v. DeSyllas* (1977), 45 Ill. App. 3d 599, 359 N.E.2d

1214.) The trial court's ruling is given great weight since it is in the unique position of hearing the testimony and arguments, observing the conduct of the parties and their counsel, and calculating the effect these matters have on the jury. (*Johnson v. Cunningham* (1969), 104 Ill. App. 2d 406, 244 N.E.2d 205.) Here, each instance of alleged misconduct was brought to the trial court's attention in the post-trial motion. This court, too, has reviewed the instances and finds no abuse of discretion.

The city of Chicago contends that the trial court erred in refusing the city's instructions based on sections 2—109 and 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—109, 2—202). However, the city failed to raise the issue in its post-trial motion, and in its failure to do so, waived this issue as a basis for a new trial or reversal on review. (*Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 418 N.E.2d 431; *Zukosky v. Grounds* (1980), 85 Ill. App. 3d 355, 406 N.E.2d 848; *United States ex rel. Maxey v. Morris* (7th Cir. 1979), 591 F.2d 386, *cert. denied* (1979), 442 U.S. 912, 61 L. Ed. 2d 278, 99 S. Ct. 2828.) We therefore need not decide the merits of the issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.