THE PEOPLE OF THE STATE OF ILLINOIS *vs.* AMOS WILCOX, Appellee.—(THE BOARD OF FISH COMMISSIONERS, Appellant.)

*Opinion filed December 15, 1908.*

1. CONSTITUTIONAL LAW—*"local" and "special" laws distinguished.* The term "local," as applied to legislation, means such legislation as relates to only a portion of the territory of the State, while the word "special," used in such connection, refers more appropriately to such legislation as grants some special right, privilege or immunity or imposes some particular burden upon but a portion of the people of the State.

2. SAME—*both "local" and "special" laws are prohibited by the constitution.* Section 22 of article 4 of the constitution prohibits the passage of "local" or "special" laws in certain specified cases, and a law passed in violation of such section must be held void, whether it is classified as a local or a special law.

3. SAME—*section 21 of act of 1907, for protection of fish, is unconstitutional.* Section 21 of the act of 1907, for the protection of fish, (Laws of 1907, p. 343,) requiring persons desiring to fish in any waters of this State, except Lake Michigan, with a hoop net, seine or trammel net to first obtain a license and tag for such nets and seines, is in violation of section 22 of article 4 of the constitution, prohibiting the passage of local laws for the protection of game or fish.

4. SAME—*provision of constitution prohibiting passage of local laws for the protection of fish construed.* The provision of section 22 of article 4 of the constitution, forbidding the passage of local laws for the protection of game or fish, was intended for the express purpose of preventing legislation on such subject which should not operate in all the territory subject to the jurisdiction of the State.

CARTWRIGHT, C. J., and HAND and CARTER, JJ., dissenting.

APPEAL from the Circuit Court of Schuyler county; the Hon. HARRY HIGBEE, Judge, presiding.

CHIPERFIELD & CHIPERFIELD, for appellant.

L. A. JARMIN, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Amos Wilcox was charged before a justice of the peace of Schuyler county with the violation of section 21 of the act of June 5, 1907, entitled "An act to encourage the propagation and cultivation and to secure the protection of fishes in all the waters under the jurisdiction of the State of Illinois, defining the duties of the fish commissioners, fixing their compensation and providing penalties for the violation of the provisions thereof." Appellee was convicted before the justice of the peace before whom the prosecution was commenced, and he took an appeal to the circuit court of Schuyler county. In the circuit court appellee made a motion to quash the complaint on the ground that said section 21 is invalid, null and void, in that it violates section 22 of article 4 of the constitution, which provides that the General Assembly shall not pass local or special laws for the protection of game or fish. This motion was by the circuit court sustained, the complaint quashed and appellee discharged. Exceptions were duly preserved to this action of the court by the People, and the fish commissioners of the State, by virtue of section 13 of said act, have prosecuted an appeal to this court.

The only question raised on this appeal is the constitutionality of section 21 of the act above referred to. Section 21 provides that any person desiring to fish in any of the waters, as provided for in section 1 of said act, within the jurisdiction of this State, with hoop net or with seine or trammel net, shall first obtain a license from a city or county clerk, who are authorized by said act to issue such license.

The license fee is fixed at fifty cents for each hoop net and five dollars per hundred yards of seine or trammel net. The act provides that the fish commissioners shall prescribe a uniform style and pattern of metal tags which shall be attached to hoop nets and each hundred yards of seine or less, or trammel nets, in such manner as to be at all times exposed to public view, and that any person using any hoop net, seine or trammel net which has no tag attached, as provided by said act, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum not less than $25 nor more than $100, and such untagged net or seine shall be forfeited to the State. A proviso added to said section excludes Lake Michigan from its operation, and it is this proviso that is supposed to render said section unconstitutional under that clause of section 22 of article 4 of the constitution of 1870 which prohibits the passage of local or special laws for the protection of game or fish. All of the objections urged may be considered together.

When reduced to their final analysis, the several contentions made against the validity of this statute amount simply to this: that the legislature has no constitutional power to pass a law for the protection of fish, impose penalties for its violation and restrict the operation of such law to a particular portion of the waters of the State. Section 22 of article 4 of the constitution of 1870 provides that the General Assembly shall not pass local or special laws on certain specified subjects enumerated in said section, and it is provided further that no local or special law shall be passed on any other subject where a general law can be made applicable. Concerning the subject as to which local or special laws are interdicted the constitution is mandatory, and any act falling within the description of local or special legislation must be held unconstitutional, whatever may be the character of the law in other respects. A special act of the legislature upon a subject other than those specified in this section may be constitutional, since the deter-

mination of the legislature that a general law cannot be made applicable to such subject is not open to review. *City of Mt. Vernon* v. *Evens Brick Co.* 204 Ill. 32.

The words "local" and "special" are frequently used interchangeably, although it is clear that they do not have the same meaning. The word "local" signifies belonging to or confined to a particular place. When applied to legislation it signifies such legislation as relates to only a portion of the territory of a State. (Bouvier's Law Dict.; Burrill's Law Dict.; *People* v. *O'Brien,* 38 N. Y. 193; *People* v. *Newburgh, etc. Railroad Co.* 86 id. 1; *Ellis* v. *Frazier,* 38 Ore. 462; 53 L. R. A. 454.) The word "local" is used as a counter-term to "general." The word "special" appears to be more appropriately applied to laws that grant some special right, privilege or immunity or impose some particular burden upon some portion of the people of the State less than all. (*State* v. *Carson,* 67 N. J. L. 178.) Special as well as local laws are forbidden under our constitution respecting the several enumerated subjects in section 22. Upon other subjects special laws may be constitutional where they apply to all members of a designated class, where the classification rests upon some disability, attribute or classification marking them as proper objects for the operation of special legislation. (*Gillespie* v. *People,* 188 Ill. 176; *Ruhstrat* v. *People,* 185 id. 133; *Starne* v. *People,* 222 id. 189; *Off & Co.* v. *Morehead,* 235 id. 40.) Since our constitution prohibits both local and special legislation in the specified cases, an act that falls under either classification must be held void.

The words "local" and "special," as used by the framers of our constitution, were designed to remedy different evils. Judge John Scholfield, who afterwards as a member of this court did much towards settling the construction of our constitution, introduced the resolution which finally became section 22 of article 4. In discussing this section before the constitutional convention Judge Scholfield said: "It

was said by the gentleman from Grundy, (Mr. Peirce,)
however, that our present constitution provides for the pas-
sage of general laws and prohibits special legislation.    It
does so, but in such a manner as that the prohibition is prac-
tically ineffectual.    It leaves the judgment of the legisla-
ture to be final and conclusive on the question of whether
the object sought can be accomplished by a general law
or whether it must be accomplished by a special law, and,
therefore, whenever a legislature assumed to pass a special
law it follows that the legislature had exercised its judg-
ment upon a question, and that is conclusive.    It was not,
however, the people that demanded the special laws.    The
thousands of private charters that have been passed by for-
mer legislatures of the State were not demanded by the
people as a body politic at all.    They were satisfied with
general laws upon the subject.    It was in most instances
individuals who demanded these special laws,—individuals
who were not satisfied to do business upon a broad and hon-
est basis upon which all might be equal but who wanted
special favoritism,—chances to plunder the public treasury
or their fellow-men, covered up by a private charter to
avoid detection or punishment.    Those were the men who
demanded these special laws, and at their bidding and by
their behests they were passed.    It was they who filled our
lobby with the instruments and appliances of corruption.
It was the applicants for these special favors that made
legislation profitable, and enabled legislators, on a salary
of two dollars per day, to at the end of a session display
their wealth like successful gamblers."    (1 Debates of the
Const. Convention, p. 512.)

Hon. Jonathan Merriam, a member of the constitutional
convention from the twenty-seventh district, in discussing
the clause of the constitution now under consideration, on
page 576 of the same work said: "Mr. Chairman, the re-
port of the legislative committee simply trims off a few of
the branches of this Upas tree of special legislation.    I, sir,

am in favor of laying the ax at the root of the tree. We want no half-way measures about this matter. If there be any one thing that the people are agreed upon, it is that the whole foul system of special legislation shall be wiped out. It has been, and while it remains it must ever be, the ground work of corrupt, ring legislation. It gives to corporations and individuals extraordinary powers, benefiting the few at the expense of the many. It fills the lobbies of our State capitol with corruptionists. It creates a vast number of statutes that are conflicting and contemptible. It has disgraced our legislatures, demoralized the people, befogged the lawyers and bewildered the courts. It is utterly at variance with every principle of statesmanship and sound public policy."

It will thus be seen what the constitutional convention was seeking to accomplish by prohibiting special legislation. But special legislation was not the only evil that was to be remedied. There had grown up in this State a great body of purely local laws on various subjects, the most conspicuous of which are those enumerated in section 22 of article 4. Among the subjects with which the legislature had been dealing were a large number of acts relating to the protection of fish and game. There was an act passed February 22, 1861, entitled "An act for the protection of fish within the county of Rock Island." This act made it a misdemeanor to take or capture fish within Rock Island county with seines, gill nets, dip nets or other nets, and provided for the prosecution of persons who should violate said act and their punishment by fine of five dollars for each fish so unlawfully taken. (Laws of 1861, p. 122.) Other acts were passed of a similar character applicable to Knox county; one prohibiting the netting of fish in the Grand Rapids of the Wabash river, in Wabash county; another act prohibiting fishing with seine or net in the Illinois river between Starved Rock and the dam at Marseilles; an act preserving game in Macoupin county; an act ex-

empting Piatt county from the operation of the Game law; another act extending the Game law of 1865 to Bond, Fayette, Effingham, Marion, Clay, Richland, Hamilton, Wayne, Warren, Henderson and Jersey counties; an act in 1869 prohibiting fishing, except under certain conditions, in any part of Adams county; another act preserving fish in Rock river; another act preventing the netting of fish in Kankakee, Iroquois and McHenry counties; another act preventing the netting of fish in Will county; another restricting killing of game in Henry county; another preserving game in Montgomery and Moultrie counties. These and many other acts of like character had been passed from time to time by the legislatures, so that the subject of fish and game was covered by such a great number of local and antagonistic laws that the legal profession and the courts, as well as the people, were harassed by the great mass of conflicting local laws. It was this condition of things that led the constitutional convention to adopt the clause of the constitution now under consideration, for the purpose of restricting the power of the legislature upon these subjects to such laws as should have a uniform application throughout all the territory subject to the jurisdiction of this State.

It is strongly urged upon our consideration by appellant that the proper protection of fish in our State requires laws of local application, owing to the differences existing in the kinds and habits of the fish found in the different waters of the State. Strong arguments along this line are made, the effect of which is merely to show what might reasonably have been the intention of the framers of our constitution. But such arguments can have no weight where the intention is clearly expressed by the words used. This same argument seems to have been made in the constitutional convention. The clause under consideration, as originally drawn, simply prohibited the passage of local or special laws for the protection of game. Upon the final consideration of the clause the words "or fish" were added.

On the consideration of the amendment it was suggested that a general law upon this subject might operate unequally in different parts of the State,—that what was suitable to the north might not be acceptable in the south. The amendment was, however, agreed to and became a part of the constitution. (1 Const. Debates, p. 608.) It thus appears that the clause of our constitution now under consideration was proposed by the constitutional convention for the express purpose of preventing legislation for the protection of game and fish by laws that should not operate in all the territory subject to the jurisdiction of the State. It is not for the courts to pass upon what the constitution or laws ought to be, but to declare what they are.

In our opinion it is impossible to sustain section 21 of the act in question under our constitution. The section is invalid, and the court below did not err in quashing the complaint.

The judgment of the circuit court of Schuyler county is affirmed.          *Judgment affirmed.*

CARTWRIGHT, C. J., HAND and CARTER, JJ., dissenting:

The constitution forbids the passage of local or special laws for the protection of game or fish, and the only question in this case is whether the provision requiring license for fishing with hoop net, seine or trammel net, which does not apply to Lake Michigan, renders the act local or special. It has not been claimed by anyone that local or special laws for the protection of fish are not prohibited or that the prohibition is not to have its full and legitimate effect, and, on the question whether this law is local or special, the facts that local and special laws existed before the adoption of the present constitution, and that the framers of the constitution thought such laws ought to be prohibited, seem to be without relevancy or point. It would be a natural conclusion, from the prohibition, that such laws were regarded as having evil tendencies.

Touching the only question submitted to the court for decision, the condition of the law is this: Two acts of the legislature took effect on the same day. One required a license for fishing with hoop net, seine or trammel net, and provided that the requirements should not apply to Lake Michigan; the other required a license for fishing by means of a steam, gasoline or sail boat upon the waters of Lake Michigan under the jurisdiction of this State, and the two acts constitute the whole law and embody the will of the legislature on the subject.

In considering the constitutional question, it is to be borne in mind that the legislation is presumed to be in harmony with the constitution, and is not to be held void if it can be sustained upon any reasonable ground.

The constitutionality of an act does not depend on the mere form or language of the enactment, but the question to be determined is whether it produces a result prohibited by the constitution. (*People* v. *Cooper*, 83 Ill. 585.) A statute which applies uniformly to all persons in the State similarly situated cannot be said to be a special law; (*Hawthorn* v. *People*, 109 Ill. 302;) and the law is not local merely because it is operative in a single place or places where the conditions necessary to its operation exist. (*Trausch* v. *County of Cook*, 147 Ill. 534.) There are essential differences between the kinds of fish inhabiting the waters of Lake Michigan and those found in the small lakes and streams of the State and in the methods of fishing, and this is matter of common knowledge. When these material differences are pointed out as a basis for different provisions in the law, a reply that the arguments can have no weight as against the intention clearly expressed in the constitution seems to be ineffectual, since the question is whether the law comes within the prohibited class and is contrary to such intention. Different provisions may be essential to accomplish the purpose of the legislation. Local and special laws for the protection of game are prohibited, but it has

not been thought that the legislature were thereby prevented from making different provisions with respect to different kinds of game, both as to open 'and closed seasons, or an absolute prohibition for a term of years, or the requirement of a license for hunting one kind of game and not for another. A game law is not regarded as within the prohibition of the constitution although a license is required for hunting certain kinds of birds and rabbits or squirrels but no license is necessary for hunting coons, ground hogs or possums. Hunters of some kinds of game may be rewarded by bounties while hunters of other varieties may be compelled to bear the burden of procuring a license.

In this case there is no evidence that fishing is carried on in Lake Michigan by means of hoop nets, seines or trammel nets, and until that appears it certainly cannot be said that the law is either local or special. The presumption in favor of the validity of the act would justify the conclusion that fishing in Lake Michigan is carried on by means of boats and launches, and that fish are caught in the small lakes and streams by means of hoop nets, seines and trammel nets. There are provisions of the act under consideration, such as the prohibition against fishing within a certain distance from a dam, which necessarily can only apply to streams and not to the small lakes or to Lake Michigan, and no one would say that the law is thereby rendered local. The license is required by the law for the only kind of fishing which, so far as appears, is carried on in the waters of Lake Michigan; and we do not regard the act as either local or special by reason of the fact that one license is required for fishing in small lakes and streams by one method, and a different license is required for fishing in Lake Michigan in another way.