BERNADINE SISTI, Plaintiff-Appellant, *v.* CAROL BARKER, Defendant-Appellee.

Second District   No. 77-539

Opinion filed April 12, 1979.

Bernard P. Reese, of Reese & Reese, of Rockford, for appellant.

Alfred W. Cowan, Jr., of Brassfield, Cowan & Howard, of Rockford, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The plaintiff appeals from the verdict of the jury awarding her $5000 as damages for injuries suffered in an automobile accident. Since the defendant admitted liability only the issue of damages was tried.

At the time of the accident—December 21, 1973—the plaintiff was a passenger in an automobile being driven by her husband, which was stopped or moving very slowly. The plaintiff was wearing a neck brace, which she wore at all times to stabilize and protect her neck, because her neck had been injured in a previous accident in 1957. She also had a pillow behind her. The defendant, driving behind the plaintiff's car, was apparently intoxicated and ran into the rear of the plaintiff's vehicle, causing damage to the extent of $184.

The plaintiff's car was driveable and her husband drove her to the hospital where she was X-rayed and released. On January 7, 1974, the plaintiff went to Mayo Clinic, where she had been a patient many times before. At that time she was examined but not found to be in need of any specific medical treatment. Dr. Allan Dale of the Mayo Clinic testified by deposition that he saw the plaintiff on January 8, 1974, for the first time. However, the clinic records showed that she had been at the clinic several times from August 1959, when she had a bilateral laminectomy of her spine, through November 1966, which was her last visit to the clinic before the January 1974 visit. Dr. Dale testified that when he saw the plaintiff on January 8, 1974, he did not prescribe any specific treatment for her. His notes indicated the plaintiff had been wearing a "four-poster" neck brace since 1966 and it was his opinion that she had a spinal cord lesion, a chronic condition.

Testimony indicated that the plaintiff had been injured in an accident similar to the December 1973 accident in May 1957, when her car was struck from the rear by a milk truck. Her neck was injured in that accident and she had surgery in Rockford following the accident. In 1959 she went to the Mayo Clinic because she was having limpness and weakness in her right arm and leg. Mayo Clinic performed a laminectomy at that time. This was followed by several more operations. Following these operations she continued to wear a neck brace. In 1966, she went back to Mayos for an evaluation. The clinic notes indicate that the plaintiff was wearing her neck brace almost continually at that time and if she tried to go without it even for a few minutes she would experience pain in her neck and her right arm would become numb.

At this deposition Dr. Dale was asked: "Doctor, in your opinion were

the findings that you made in January of 1974 essentially any different than the neurologic findings that had been made on Mrs. Sisti's last admission to the Mayo Clinic in 1966?" His answer was: "I thought even though she said her symptoms had become worse in December when I saw her several weeks later, I thought that her neurologic examination was essentially as had been recorded here in 1966."

The doctor did not prescribe any specific treatment for the plaintiff following his examination in 1974. At that time she did not make any complaints about her lower back. Dr. Dale next saw the plaintiff in July of 1976. Her symptoms were the same as they had been previously. However, at that time she did complain about having more lower back pain than she had had before. Dr. Dale thought her neurologic condition was essentially the same as it had been on January 8, 1974, when he first saw her. He did not diagnose or prescribe any treatment for her lower back pain in 1976. He saw "no clear sign of any new nerve damage when I examined her in 1974." On direct testimony, the plaintiff testified there had been pain in her neck and head continually since the 1957 accident and she had to wear a neck brace 24 hours a day, but she contended the pain and discomfort and general weakness had become worse since the 1973 accident.

The plaintiff appeals the jury award of only $5000 as being inadequate compensation for the alleged aggravation of her previous condition, resulting from the 1973 accident. Specifically she complains (1) that it was error for the trial court to have admitted evidence of the complaint she filed as the result of the 1957 accident, in which she alleged her injuries were "permanent"; (2) that she was prejudiced by the trial court's ruling that she could not testify that she was seeing a psychologist unless she could tie such visits up with some degree of medical certainty to the 1973 accident; (3) that defense counsel was improperly permitted to comment on the defendant's reason for admitting liability after defendant obtained a motion *in limine* to preclude testimony not related to the facts surrounding the collision and the nature and extent of the damage, and (4) the plaintiff also complains as to the court's ruling refusing the admission of testimony as to future medical expense and the exclusion of certain medical bills.

The contention of the plaintiff that the introduction of her 1957 complaint into this suit as evidence was error, is no doubt derived from the language in several cases questioning the relevancy of such previous pleadings. In the case of *Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 256, the decision was based specifically on the Civil Practice Act itself, section 43(2) (Ill. Rev. Stat. 1965, ch. 110, par. 43(2)), which the court held to preclude raising an alternative, unverified pleading as an admission against interest. As to such cases as *Caley v. Manicke* (1961), 29 Ill. App.

2d 323, and *Marut v. Costello* (1964), 53 Ill. App. 2d 340, these are based on a lack of relevancy of the pleadings sought to be admitted, that is that the previous injury was not shown to be connected with the present allegations. These cases are clearly not relevant to the case before us since the plaintiff in this case admitted her previous injury and its connection with the present case only claiming that her previous condition was exaggerated by the collision which occurred in 1973. The *Schusler* case being based on an alternative pleading is not apposite here because the original pleading in the plaintiff's 1957 case was not an alternative pleading. See *Howes v. Baker* (1973), 16 Ill. App. 3d 39.

■■ As pointed out by the defendant, the only issue in the case before us is whether and to what extent the plaintiff's previous condition was aggravated by the 1973 collision. The plaintiff did not deny either the fact of the previous injury nor its severity. The theory of the plaintiff's case is that while she had previously sustained severe and lasting injuries, she had improved significantly up to the time of the 1973 accident, and that that accident had caused serious aggravation of an improving situation. Thus, there can be no question of relevancy in introducing the previous pleadings—the whole question at issue is whether and to what extent the plaintiff's condition was materially altered for the worse by the 1973 accident and that cannot be properly considered without evidence as to the nature and extent of her previous injuries. In this case, we think the previous complaint was relevant and competent evidence in the posture of the case. See *Chambers v. Appel* (1945), 392 Ill. 294; *Carlson v. New York Life Insurance Co.* (1966), 76 Ill. App. 2d 187.

■ We find no error in the trial court's ruling that the plaintiff could not testify that she was consulting with a psychologist unless there was an indication that such consultation would be tied up to a cause or condition arising out of the accident of 1973. Plaintiff's counsel did not contend he could show these visits were necessitated or prompted by the 1973 collision. Plaintiff's counsel explained the basis for his intention to ask the plaintiff whether she was seeing any other doctor, as follows:

> "What I would propose to ask is whether or not you've seen anybody else, yes, I saw Dr. Tom Hollard [the psychologist], what was the reason for seeing him, Because I wanted to see—whatever she would say."

It is clear from this colloquy that the trial court acted properly in sustaining the defense objection, since plaintiff's attorney had evidently not intended to connect the testimony to the 1973 collision—the damages from which were the only point at issue. While the plaintiff contends that she was precluded from giving testimony as to her "emotional state," the specific ruling was simply that she was precluded from testifying that she was visiting a psychologist, since it did not appear that this testimony

would be connected specifically to the 1973 accident. No offer of proof was made as to what plaintiff's testimony would be as to her emotional state.

The plaintiff's contention as to improper argument of defense counsel is a somewhat subtle one. Plaintiff points out that the defendant's purpose in admitting liability and confining the issue to one of damages was to avoid disclosing that the defendant was intoxicated at the time of the collision and left the scene of the accident. In a pretrial conference, defense counsel made a motion *in limine* to limit the testimony regarding the circumstances of the collision. The exact form of the motion is not of record but it appears from the colloquy between court and counsel that it was agreed that no mention would be made of the circumstances of the defendant being intoxicated at the time of the collision. Plaintiff's counsel argues that the defendant, having gotten a ruling which precluded the plaintiff from showing that the defendant was drunk and left the scene of an accident, then attempted, in closing argument, to imply that the defendant admitted liability from sheer motives of honesty and candor, thus taking advantage of the court's ruling restricting evidence as to the background of the collision and giving a false impression as to the defendant's true motives in admitting liability.

■■ Defendant's motive in admitting liability was not an issue in this case and, therefore, this argument was improper. However, after reviewing the entire record and, in particular, the medical evidence and the issue to be decided by the jury, we are of the opinion that defense counsel's argument did not constitute reversible error.

■■ Objection is also made to the exclusion of certain medical bills. These bills were not clearly identified as being connected with the collision of 1973. There was no medical testimony so connecting them. We think it was within the trial court's discretion to exclude those bills that were not properly connected with the accident in question.

■■ As to the submitted and refused instructions on future medical expense, we think this was not an abuse of discretion. There was no medical testimony sufficiently differentiating the plaintiff's present condition from her condition and symptoms prior to the 1973 accident. The plaintiff was allowed to argue that she will continue to suffer pain in the future and to have medical treatment in the future, but the projection for actual expense for such treatment as part of the 1973 collision was not allowed because of the lack of competent medical testimony indicating any separate or additional expense which would not have been incurred except for the 1973 collision. Bearing in mind the plaintiff's history of continued treatment from 1957, we think the trial court committed no error in so ruling, where such projected expense could not be tied down to the 1973 collision.

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

GUILD, P. J., and WOODWARD, J., concur.