DELORES KOKOTKWIECZ, Plaintiff-Appellant, v. LEPRINO FOODS COMPANY, Defendant-Appellee.

Fourth District   No. 4—87—0112

Opinion filed October 29, 1987.

494

Manion, Janov, Devens, Fahey & Woodward, Ltd., of Danville (Rick E. Janov, of counsel), for appellant.

Gary R. Lietz, of Franklin, Flynn & Palmer, of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff, Delores Kokotkwiecz, filed a personal injury action against defendant, Leprino Foods Company, alleging negligence. Plaintiff claimed that a semitruck and trailer, owned and operated by defendant, "brushed" against her causing her to lose her balance. As she was falling, her husband reached out to her, jerking her upright. The motion allegedly aggravated a preexisting back injury, causing her serious pain, eventual surgery, and permanent physical disability. After a trial, the jury rendered a verdict in favor of defendant. The

circuit court of Champaign County entered judgment on the verdict. Plaintiff appeals. We affirm.

On July 6, 1982, plaintiff and her husband went together to the CarleCare Clinic in Urbana for her husband's appointment with a dermatologist. As they left the clinic, they crossed a nearby street at an intersection and proceeded down another street on the way to their car. A short distance from the intersection, an 18-wheel semitruck and trailer, owned by defendant, passed plaintiff and proceeded several feet before stopping. The driver, an employee of defendant, stopped to eat lunch at a nearby restaurant. Plaintiff claims the trailer portion of the truck brushed against her. Her husband, walking beside her, grabbed her to prevent her from falling. The motion of pulling her upright caused her to aggravate a previous back injury. She was not immediately hospitalized, but reported to her doctor several months after sustaining the injury. She eventually required surgery for a herniated disc and is permanently, partially disabled.

Defendant denies liability. The facts are in dispute as to whether the trailer actually struck plaintiff or merely startled her. We need not dwell on this dispute, however, as the alleged errors relate to the medical testimony and the conduct of the trial. Plaintiff argues the following errors occurred at trial: (1) the trial court erred in allowing a medical expert, consulted on behalf of defendant but called at trial on behalf of plaintiff, to view additional medical records at trial, and to vary his medical opinion from that given in a discovery deposition; (2) defense counsel improperly suggested in closing argument that plaintiff's medical expert should not be believed because his testimony was through a videotape and not in person; (3) the trial court erred in allowing defendant to cross-examine plaintiff as to workers' compensation action stemming from her 1976 injury; and (4) the trial court erred in preventing plaintiff from introducing a letter from defendant to plaintiff apologizing for her misfortune. In order to discuss the first issue, we must first explain some of the pretrial discovery proceedings.

Prior to trial, defendant contacted Dr. Donald Ross, a specialist in orthopedics, and asked him to examine plaintiff. After the examination, plaintiff deposed Dr. Ross for discovery purposes. Plaintiff's attorney and Dr. Ross engaged in the following colloquy during the deposition:

"Q. Okay. Now, when you talked about this accident she described to you, this was the accident that she related near Carle Clinic?

A. Is that the accident you're asking me about?

"Q. Yeah. As you feel was causal relationship.

A. That's the one I feel is causal relationship.

Q. Okay. And you indicated that the injury—her pre-existing condition was aggravated, is that true?

A. That's true.

Q. And could you tell me exactly what pre-existing condition you felt was exaggerated as a result of this occurrence?

A. I felt she had a back sprain an [sic] a possible ruptured disc as early as 1976, when she had her prior accident."

In elaborating on the doctor's opinion about the injury from 1976, the following discussion occurred:

"Q. You felt that it might be true that Delores Kokotkiewicz had a ruptured disc as a result of her 1976 occurrence?

A. I felt that she did.

Q. She did or she might?

A. Well, I felt that she did.

Q. What did you base that on?

A. Well, the history that she related to me.

Q. Okay. What exactly about that history that led you to believe that she had a ruptured disc arising out of the 1976 occurrence?

A. Well, the fact that she complained of right leg sciatic pain at that time, that she was in the hospital at that time, and that she was under another doctor's care for a six month period and, then, stated that her symptoms gradually subsided, which would make me feel, based on the history alone, that she had a significant injury at that time.

Q. Yeah. But, in particular, what about those three things that leads you to the opinion that it was a ruptured disc?

A. Well, the fact that she had a right leg sciatica related to the backache and had an injury that might have or could have produced the ruptured disc.

Q. Okay. Well, does the presence of right leg sciatica necessarily mean there's a ruptured disc?

A. No, sir, it does not.

Q. What are some of the other things that can be indicative of it?

A. Well, back sprain.

Q. Anything else?

A. Usually when there's a—has been a back sprain and there is leg pain, the most common cause is a ruptured disc. And it might be I would have to list everything that occurs in

medicine from diabetes to arthritis, et cetera, et cetera.

Q. That would be too long a list?

A. Right.

Q. But in any event—

A. It's—

Q. It's true a person can have trauma and have a right sciatica and not have a herniated disc, is that right?

A. That's possible.

Q. And it's possible, isn't it, that she did not have a herniated disc from her 1976 occurrence, is that true?

A. It would be possible."

At trial, Dr. Ross was called as a witness for plaintiff. He was called under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102), which provides for the calling of an adverse party to testify. Dr. Ross was asked in plaintiff's examination if his opinion of the injury was that "the herniated disc may have been present dating back to 1976." He responded: "That's possible."

In defendant's examination, Dr. Ross was shown some progress notes from the physician who treated plaintiff in 1976. He had not previously seen those notes. Defendant's purpose was to elicit a more solid opinion from Dr. Ross that the herniated disc occurred in 1976. Plaintiff objected on the grounds that the new material, and any variance of the doctor's opinion resulting from an examination of the new material, violated Supreme Court Rule 220(d) (107 Ill. 2d R. 220(d)). The court allowed the doctor to be so examined, as it found the opinion would not differ from the doctor's opinion given in his deposition. The court also stated that the progress notes were facts into which inquiry was not made in the discovery deposition.

Dr. Ross then gave his opinion that plaintiff had a herniated disc in 1976.

Supreme Court Rule 220(d) (107 Ill. 2d R. 220(d)) provides as follows:

"To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings through interrogatories, depositions or requests to produce, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of the facts known or opinions disclosed in such discovery proceedings. However, he shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings."

Plaintiff argues on appeal that the opinion rendered by Dr. Ross at trial was substantially different from his opinion given at the deposi-

tion. The difference in opinion resulted, according to plaintiff, from the new material Dr. Ross was allowed to examine at trial. Plaintiff argues this was a violation of Rule 220(d); defendant was under a duty to inform plaintiff of any change in Dr. Ross's testimony prior to trial.

Defendant responds by first arguing that the matter is irrelevant as the testimony of Dr. Ross related to damages. The jury verdict of no liability showed they never reached the issue of damages. We need not address this argument in view of our holding below.

Defendant's second response directly addresses the language of Rule 220(d). Defendant argues Dr. Ross' opinion was the same in his deposition as at trial. Dr. Ross' opinion fits within the language of Rule 220(d) in that it was not "inconsistent with or go beyond the fair scope of the *** opinions disclosed in such discovery proceedings." (107 Ill. 2d R. 220(d).) We agree. In his discovery deposition, Dr. Ross was asked whether "it might be true that [plaintiff] had a ruptured disc as a result of her 1976 occurrence." The doctor's response was "I felt that she did." After another question, the doctor made it clear that his opinion was that plaintiff did sustain a herniated disc in 1976.

At the trial, plaintiff elicited from Dr. Ross the possibility of such an injury in 1976. This answer came about primarily because Dr. Ross was called as a witness under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1102) and was being questioned in cross-examination style. He was able to give direct responses only and not to give an explanatory opinion. Defendant had the right to bring out the stronger belief that he had previously stated in his deposition.

■ In any event, the procedural posture of Dr. Ross' testimony was erroneous. The posture necessarily affected the methodology used by defense counsel. Proffering Dr. Ross additional material in the form of the treating physician's progress notes would clearly have been disallowed under Rule 220(d) had defendant called Dr. Ross to testify. Defendant did not, however. In fact, Dr. Ross testified, on cross-examination by plaintiff, that he had not been requested to testify at the trial other than by plaintiff. Plaintiff called Dr. Ross to testify as an adverse party. However, the doctor was not an adverse party (see *Alm v. General Telephone Co.* (1975), 27 Ill. App. 3d 876, 882, 327 N.E.2d 523, 527), neither had he demonstrated any hostility such that plaintiff could treat him as an hostile witness. (Ill. Ann. Stat., ch. 110A, par. 238, Committee Comments, at 521 (Smith-Hurd 1985); *Harris v. Algonquin Ready Mix, Inc.* (1973), 13 Ill. App. 3d 559, 565, 300 N.E.2d 824, 828-29, *affirmed in part & dismissed in*

*part* (1974), 59 Ill. 2d 445, 322 N.E.2d 58; see generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence sec. 607.4 (4th ed. 1984).) Dr. Ross was plaintiff's witness, and as such, the doctor's testimony had to be accepted by plaintiff. In effect, by calling Dr. Ross as her own witness, plaintiff exempted defendant from complying with Rule 220(d). Since defendant had no plans to call Dr. Ross, defendant had no need to supplement the doctor's opinion. Had it planned to call the doctor as its expert, it would have been required to give plaintiff notice of any changes or additional bases for the doctor's opinions. It was not error under these circumstances for defendant to use additional material to firm up the doctor's previous opinion. Moreover, defendant followed the proper procedure in eliciting the opinion from Dr. Ross as required under *Wilson v. Clark* (1981), 84 Ill. 2d 186, 192-96, 417 N.E.2d 1322, 1325-27, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140.

Plaintiff's second alleged error is that defense counsel made improper suggestions in closing argument about the video evidence deposition of plaintiff's expert witness. Dr. Bharat Mehta was plaintiff's treating physician. He had treated plaintiff when she had incurred the original injury in 1976 and the subsequent injury in 1982. He did not appear at trial but gave testimony through a video evidence deposition. Dr. Ross, who was called by plaintiff, gave testimony which favored defendant.

In closing argument, defense counsel compared the testimony of the two doctors. After discussing Dr. Mehta's testimony, counsel argued as follows:

> "And then we have to controvert that, because [plaintiff's counsel] said it was uncontroverted. In fact, it is controverted. We have Dr. Ross. An [*sic*] you saw him yesterday in person, and he testified, according to the same medical records that Dr. Mehta had prepared, the Plaintiff had a herniated disc as far back as 1976. Dr. Mehta then, not surprisingly, made a few remarks about how this 1982 injury was the causative factor for her 1982 surgery. That, again, I have to say is not too surprising. He was a very well-prepared witness, he was very descriptive and very complete in his answers to Plaintiff's attorney's questions. I suggest to you that a physician, even a treating physician, should come to this court room and should be as reliable and as disinterested in this case as (unintelligible). I don't believe his answers to my questions were nearly as complete, nearly as explanatory."

Plaintiff argues the reference to Dr. Ross' personal appearance and

the remark about "com[ing] to this court room" were specifically designed to emphasize Dr. Mehta's absence. These remarks were, therefore, unfairly prejudicial. Defendant responds by stating the argument was just fair commentary, and since plaintiff raised no objection at trial, any error is waived.

■ No objection was made at trial, and the alleged error is waived. (See *Moehle v. Chrysler Motors Corp.* (1982), 93 Ill. 2d 299, 303, 443 N.E.2d 575, 577; *J. R. Sinnott Carpentry, Inc. v. Phillips* (1982), 110 Ill. App. 3d 632, 639, 443 N.E.2d 597, 603.) Moreover, the comments are not clearly aimed at disparaging plaintiff's expert witness. They are, at most, ambiguous and do not constitute plain error. See *Sramek v. Logan* (1976), 36 Ill. App. 3d 471, 473-74, 344 N.E.2d 47, 49.

The third alleged error involves testimony of the plaintiff brought out on cross-examination. Plaintiff alleges it was error for her to be questioned regarding the workers' compensation action stemming from her previous back injury in 1976. Plaintiff filed a motion *in limine* asking the court to prevent defendant from mentioning any "[r]eference to any civil suits, workman's compensation claims, actions, settlements, disability payments, awards, medical payments or other recoveries made by a third party to the Plaintiff, arising out of the Plaintiff's workman's compensation injury/claim in 1976." The court denied the motion based on the authority of *Leahy v. Illinois Power Co.* (1981), 103 Ill. App. 3d 487, 431 N.E.2d 390, and *Sisti v. Barker* (1979), 70 Ill. App. 3d 734, 388 N.E.2d 1117.

On cross-examination of the plaintiff at trial, the following colloquy occurred:

"Q. Would you describe how you injured your back in March of '76?

A. I was working as a cleaning lady.

Q. How did you injure it?

A. By lifting.

Q. Lifting a heavy object?

A. I was lifting a cleaning basket.

Q. I see. And it occurred where you were working?

A. Yes, sir.

Q. As I remember, this was your first job outside the home?

A. Yes, sir.

Q. And you, ultimately, went to go see Dr. Mehta about your lower back pain or strain in 1976, is that correct?

A. Yes, sir.

Q. And that was, approximately, in June of '76?

A. I'm not sure of the exact date.

Q. It was a month or two, or maybe a few months after the incident itself?

A. I'm not sure. It was in '76.

Q. Did you get Dr. Mehta's name from an attorney?

A. No sir.

Q. Did you file a worker's compensation claim regarding this Ramada Inn injury?

A. Yes, sir.

Q. Who was your attorney for that worker's compensation case?

\* \* \*

A. Mr. Manion.

Q. And Mr. Manion is in Mr. Janov's office?

A. Yes, sir.

Q. If I may approach the witness, your honor. I want to hand her a document. I'm handing you a document. Mrs. Kokotkwiecz, Dr. Mehta testified yesterday, in his—in his testimony—to certain medical records, and I'm going to ask you if, looking at that record, particularly page 1, if you now recall seeing the doctor—Dr. Mehta, that is—on June 9, 1976?

A. Yes, sir.

\* \* \*

Q. After reading the entry of June 9, 1976 of Dr. Mehta, particularly the first line, is your recollection now refreshed as to whether or not Dr. Mehta was referred to you by attorney Paul Manion?

A. Yes, sir.

Q. All right. And your recollection now is that Mr. Manion, in fact, did refer you to him?

A. Yes, sir.

Q. After this injury at Ramada Inn when did you return to work there?

A. I did not."

Plaintiff argues defendant focused on the fact of her workers' compensation action solely to prejudice the jury. It is plaintiff's conclusion that the collateral-source rule prevents the mention of a workers' compensation action. This is true, argues plaintiff, even though the workers' compensation action stemmed from the 1976 injury, and the 1982 injury was a wholly separate injury. Plaintiff further contends that even if it was proper to inquire into the workers' compensation action, defendant's inquiry was improper because it did not

confine itself to the extent of plaintiff's injuries. Rather, plaintiff argues the effect was to create an "innuendo of impropriety."

█ ■ It is true that evidence regarding workers' compensation claims is generally inadmissible against a plaintiff in a negligence action. (*Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 568, 190 N.E.2d 315, 316-17; *Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 729, 457 N.E.2d 85, 97.) However, the instant case is not a negligence lawsuit arising out of the same injury which produced the workers' compensation action. We believe the better rule under the facts before us is that argued by plaintiff from *Leahy*. In *Leahy*, the court recited the rule that a plaintiff may generally be cross-examined as to her previous physical condition or injuries when they are of a similar nature to those involved in the immediate litigation. Such cross-examination is proper to show causation or to lay the foundation for impeachment. (*Leahy v. Illinois Power Co.* (1981), 103 Ill. App. 3d 487, 490, 431 N.E.2d 390, 392-93.) Moreover, the mention of a workers' compensation action was brief. Defendant used the circumstances about the previous workers' compensation claim to test the credibility of plaintiff. This inquiry was short and not overly emphasized in closing argument. We find there was no error.

█ The final error alleged by plaintiff is that the trial court improperly excluded a letter from defendant which admitted liability. The letter was from the driver's supervisor. The letter was written prior to any investigation of the incident. It merely thanked plaintiff for letting defendant know of the incident and promised an investigation and appropriate discipline. Admission of the letter would have been unnecessarily prejudicial. The court did admit an "Employee Warning Record" which was the company's official action regarding the incident. The trial court acted properly in not admitting the letter.

For the reasons stated above, we affirm the order of the circuit court of Champaign County.

Affirmed.

GREEN and KNECHT, JJ., concur.