KIMBERLY A. DOLLIESLAGER, Plaintiff-Appellant, v. MICHAEL H.W. HURST, Defendant-Appellee.

Third District   No. 3—97—0591

Opinion filed March 11, 1998.

McCUSKEY, P.J., dissenting.

Melissa Melton (argued), of Braud/Westensee, Ltd., of Rock Island, for appellant.

Andrew S. Allen (argued), of Allen & Mahl, of Champaign, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Does the Physicians Lien Act (Act) (770 ILCS 80/0.01 *et seq.* (West 1996)) require that a physician be able to demonstrate a causal connection between an underlying event and the services he rendered before his lien can attach to funds related to a patient's tort action? We hold that it does. Therefore, we vacate and remand.

## FACTS

Plaintiff Kimberly Dollieslager was first treated by defendant Michael Hurst, a chiropractor, in November 1989 for headaches, cervical pain, pain between her shoulders, stiffness of the neck, and numbness in her arms. These symptoms arose sometime in September 1989 and were diagnosed as being nontraumatic. In December of that year, after 14 appointments, Dollieslager discontinued her treatment with Hurst.

In February 1991, while participating in military operations in Saudi Arabia, Kimberly fell off a truck. The fall resulted in pain throughout her entire body. In November of that year, Kimberly was involved in a serious car accident. Seven months later, in June 1992 she returned to Hurst's office and informed him that she was in pain. At that time, she informed him that she had been in a car accident the previous year and noted that she was injured in the accident and missed several days of work. She complained of cervical pain, pain between the shoulders, lower back pain, pain in the right hip, pain in the right leg and pain in her right knee. These complaints were very similar to those made in 1989.

After treating Dollieslager, Hurst served a lien upon all the necessary parties pursuant to the Act for services provided between June and August 1992. The lien was in the amount of $2,720 and was to attach to Dollieslager's cause of action or settlement stemming from the car accident. Dollieslager's action relating to the accident was subsequently settled for $6,500.

Dollieslager moved for a declaratory judgment requesting that the court declare the lien null and void on the basis that Hurst was unable to demonstrate that the treatment he provided in 1992 was causally related to the car accident. Without a causal relation, she contended that the lien could not attach and was therefore void.

A bench trial followed wherein Hurst was asked whether, with a reasonable degree of chiropractic certainty, he was able to state if there was a causal connection between Dollieslager's complaints in 1992 and the car accident in 1991. Because of the prior complaints in 1989 and the incident in Saudi Arabia, Hurst admitted that it was impossible to determine exactly what injuries were caused by the accident. He assumed that matters not previously addressed during her prior treatment were caused by the accident. Furthermore, he stated that he had to rely on Dollieslager's statement to him that she was seeking treatment for pain following her accident. At the end of Hurst's testimony, the court denied the motion for declaratory judgment. It concluded that Dollieslager had the burden of proving that there was no causal relationship between the accident and the medical treatment and that she failed to carry her burden. This appeal followed.

## ANALYSIS

◼ In light of the fact that this case centers around the interpretation of the Act as a whole, we will begin by setting out its relevant parts.

"§ 1. Every licensed physician practicing in this State who

renders services by way of treatment to injured persons, except services rendered under the provisions of the Workers' Compensation Act or the Workers' Occupational Diseases Act, shall have a lien upon all claims and causes of action for the amount of his reasonable charges up to the date of payment of such damages.

Provided, however, that the total amount of all liens hereunder shall not exceed 1/3 of the sum paid or due to the injured person on the claim or right of action, and provided further, that the lien shall in addition include a notice in writing containing the name and address of the injured person, the date of the injury, the name and address of the licensed physician practicing in this State, and the name of the party alleged to be liable to make compensation to such injured person for the injuries received, which notice shall be served on both the injured person and the party against whom such claim or right of action exists.

\* \* \*

§ 2. The lien of any such licensed physician practicing in this State shall, from and after the time of service of the aforesaid notice, attach to any verdict, judgment or order secured in any suit or action by the injured party based on the negligent or wrongful act, and to any money or property which may be recovered by compromise settlement, or in any suit or action brought by such injured person on account of such claim or right of action. \*\*\*

§ 3. Any party to a cause pending in a court against whom a claim shall be therein asserted for damages resulting from injuries shall, upon request in writing, be permitted to examine the records of the physician in reference to the examination and treatment of the injured person. Any physician claiming a lien under this act shall, within 10 days of being so requested in writing by any such party, furnish to such party, or file with the clerk of the court in which the cause is pending, a written statement of the nature and extent of the injuries sustained by and the treatment given to the injured person by such physician and the history, if any, as given by the injured person, insofar as shown by the records of the physician as to the manner in which the injuries were received.

§ 4. Any party against whom a claim shall be therein asserted for damages resulting from injuries shall, upon request in writing, be permitted to examine the records of the physician in reference to the examination and treatment of the injured person. Any physician claiming a lien under this Act shall, within ten days of being so requested in writing by any such party, furnish to such party, a written statement of the nature and extent of the injuries sustained by and the treatment given to the injured person by such physician and the history, if any, as given by the injured

person, insofar as shown by the records of the physician as to the manner in which the injuries were received." 770 ILCS 80/1 through 4 (West 1996).

Dollieslager argues that this language clearly requires that the lien be voided because Hurst cannot demonstrate that the symptoms treated in 1992 were causally connected to the accident. She maintains that evidence of a causal connection between treatment and injuries received is a necessary prerequisite to the application of the Act. Hurst, on the other hand, contends that the Act does not by its language require such proof and to do so would be an improper amendment of the Act, which has been in existence since 1959.

■ The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 451, 687 N.E.2d 1014, 1016 (1997). The legislature's intent is best demonstrated by the language of the statute itself. *Bruso*, 178 Ill. 2d at 451, 687 N.E.2d at 1016. Statutes imposing liens are construed liberally to effectuate the purpose intended by the legislature, but they are limited in operation by their terms. *Cirrincione v. Johnson*, 287 Ill. App. 3d 683, 678 N.E.2d 738 (1997); *Meier v. Olivero*, 279 Ill. App. 3d 630, 665 N.E.2d 858 (1996). When construing the language, the court must take the entire statute into account, considering each section with every other section. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 634 N.E.2d 712 (1994). The court should take caution not to inject provisions that have not been included by the legislature (*Gaskill v. Robert E. Sanders Disposal Hauling*, 249 Ill. App. 3d 673, 619 N.E.2d 235 (1993); *In re Objection of Cook to Referendum Petition of Pierce*, 122 Ill. App. 3d 1068, 462 N.E.2d 557 (1984)); however, a statute's provisions should not be construed so technically so as to undermine its remedial purpose (*Aluma Systems, Inc. v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 564 N.E.2d 1280 (1990)).

■ Looking to the Act as a whole, we find repeated references to a particular injury or a particular cause of action. Section 1 limits the lien to reasonable charges for services rendered to injured persons up to the date the damages are paid. It further requires the physician to provide notice of the name of the injured person, the date of the injury, and the party alleged to be liable. 770 ILCS 80/1 (West 1996). Section 2 provides that the lien will attach to any action by the patient *"based on the negligent or wrongful act,"* as well as any money or property recovered by settlement "on account of such claim or right of action." (Emphasis added.) 770 ILCS 80/2 (West 1996).

In our opinion, this language evidences an intent of the legislature to limit physician liens to particular causes of action for which the

physician's services are related. This is evident given the Act's specification that the lien attaches to a particular cause or claim relating to the conduct of a particular tortfeasor.

Sections 3 and 4 further demonstrate an intent to require a causal connection. Both relate to a party's right to examine the physician's records. Upon written request, the physician must also provide a statement as to the extent of the injuries sustained, the treatment given and "the history, if any, as given by the injured person, insofar as shown by the records of the physician as to the manner in which the injuries were received." 770 ILCS 80/3, 4 (West 1996). If there is no causal relation between the tortfeasor and the injury, this section could mandate that the physician disclose privileged information. Such a result would be absurd and was clearly not intended by the legislature.

Requiring a causal connection between the treatment and the conduct of the tortfeasor is also supported by *Gaskill*, 249 Ill. App. 3d 673, 619 N.E.2d 235. There the court was faced with the issue of whether the Act allowed the recovery of interest in addition to the physician's unpaid balance. The court held that interest was not recoverable under the Act because it was not a "reasonable charge" within the scope of the Act which, the court stated, is "confined to charges relating to injuries to the patient resulting from the conduct of the tortfeasor from whom comes the recovery against which the doctor's lien is asserted." *Gaskill*, 249 Ill. App. 3d at 677, 619 N.E.2d at 238.

*Gaskill* thus recognizes that there must be a connection between the tortfeasor's conduct and the treatment for which the lien is created. We agree. We therefore hold that, in order to claim a lien under the Act, the services upon which the charges are based must be related to the injury caused by the tortfeasor.

Hurst argues that this interpretation does violence to the rules of statutory construction and contravenes the *Gaskill* court's recognition that the court should not inject provisions not found in the statute. What Hurst fails to recognize is that requiring a connection between the tortfeasor's conduct and the services rendered involves more than just a technical prerequisite of the statute; it is a fundamental aspect of the Act. The Act's repeated references to a particular cause of action and an injury arising therefrom lead us to believe that the legislature intended to allow a physician a method of securing payment for his services which are solely related to a particular tortious event.

What remains to be determined is when and how the physician must demonstrate that there is a connection. The statute merely

requires notice of when the event took place. In most instances, this is as much information as will be necessary with respect to causation because it is often simple to demonstrate that an injury was the result of a specific event. As noted above, this is not such a case because the underlying cause of action against the tortfeasor involved complaints similar to those treated in 1989, and there was an intervening event in Saudi Arabia. In such a case, we believe that the physician should have the added burden, when called to task, to demonstrate a causal connection between the tortfeasor's conduct and the services rendered. The testimony need not be based on absolute authority, but should, with a reasonable degree of medical certainty, establish that the services rendered relate to the injuries resulting from the tortious event. See generally *Frankenthal v. Grand Trunk Western R.R. Co.*, 120 Ill. App. 3d 409, 458 N.E.2d 530 (1983); *Redmon v. Sooter*, 1 Ill. App. 3d 406, 274 N.E.2d 200 (1971); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 704.2, at 602-03 (6th ed. 1994); see also *Sisti v. Barker*, 70 Ill. App. 3d 734, 388 N.E.2d 1117 (1979). Absent such proof, the lien should not attach or should be reduced to the amount for which the physician can demonstrate a causal connection. Amounts not recovered through the attachment of the lien, and not otherwise recovered, can be thereafter sought through a separate action.

The trial court refused to void the lien based on the fact that Dollieslager failed to establish that the services were not related to the car accident. In light of our holding placing the burden on the physician, we vacate the trial court's judgment and remand for a specific determination as to whether the physician can establish a connection, and in what amount, given the evidence.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is vacated and remanded with directions.

Vacated and remanded with directions.

HOMER, J., concurs.

PRESIDING JUSTICE McCUSKEY, dissenting:
Because the majority's analysis goes beyond the plain language of the Act, I respectfully dissent.

The primary rule used in the interpretation of a statute is to ascertain the true intent and meaning of the legislature. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990). The legislature's intent is best evidenced by the language of the enactment. *Kraft*, 138 Ill. 2d at 189, 561 N.E.2d at 661. Consequently,

"where an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by· reading into it exceptions, limitations or conditions that the legislature did not express." *Kraft*, 138 Ill. 2d at 189, 561 N.E.2d at 661. Indeed, "[t]he court must interpret the statute on the basis of what was *written* and not search for any *subtle* or not readily apparent meaning." (Emphasis added.) *Mid-American Elevator Co. v. Norcon, Inc.*, 287 Ill. App. 3d 582, 588, 679 N.E.2d 387, 391 (1996).

In this case, I find from the plain and unambiguous language of the Act no requirement that a physician must demonstrate a causal connection between the underlying event and the services rendered before his lien attaches. Notwithstanding the *absence* of such a requirement, the majority goes far beyond the unambiguous language of the Act and engages in a strained analysis attempting to reach its desired result. The majority reads into the Act a condition "that the legislature did not express." *Kraft*, 138 Ill. 2d at 189, 561 N.E.2d at 661.

The majority has clearly entered into the area of judicial legislation, which is an improper infringement into the province of the General Assembly. See *Village of Bolingbrook v. Citizens Utilities Co.*, 158 Ill. 2d 133, 142-43, 632 N.E.2d 1000, 1004 (1994) (stating that "[i]t is not for us to usurp a function accorded to the General Assembly by the Constitution").

The intent of entering into the field of judicial legislation is further evidenced by the fact that, now after having created its causal requirement, the majority must answer the question of how the physician demonstrates there is a connection. The majority then proceeds to create even more law by placing upon the physician the burden of demonstrating a causal connection. In reading this requirement into the Act, the majority provides no statutory authority whatsoever for its final conclusion.

It is a long established principle that " '[i]t is not for the courts to pass upon what the *** laws ought to be, but to declare what they are.' " *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220, 447 N.E.2d 394, 399 (1983), quoting *People v. Wilcox*, 237 Ill. 421, 428, 86 N.E. 672 (1908). It is clear that in this case the majority has chosen to amend the statute by judicial fiat. Accordingly, I dissent.