JEFFREY ANDERSON, Conservator of the Estate of Earnest Earl Anderson, Plaintiff-Appellee, v. THE DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL DISABILITIES, Defendant-Appellant (St. Bernard's Hospital *et al.*, Defendants).

First District (5th Division)   No. 1—96—3112

Opinion filed May 14, 1999.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Erik G. Light, Assistant Attorney General, of counsel), for appellant.

Stephen I. Lane, of Lane & Lane, of Chicago, for appellee.

JUSTICE THEIS delivered the opinion of the court:

Plaintiff Jeffrey Anderson, conservator of the estate of Earnest

Earl Anderson (Anderson), sued St. Bernard's Hospital and others for injuries Anderson received when he fell from a fourth-story hospital window in 1977. The case was settled prior to going to trial. The Illinois Department of Mental Health and Developmental Disabilities (Department) sought to recover expenses it had incurred in giving long-term medical and psychiatric treatment to Anderson after his fall. Following an evidentiary hearing, the trial court adjudicated the Department's lien to zero and entered judgment for the plaintiff. The Department contends that the trial court misinterpreted the applicable statute when it required the Department to demonstrate a causal connection between the injuries sustained by Anderson and the treatment provided by the Department. The Department also argues that the court erred by adjudicating the Department's lien to zero.

Anderson was admitted to St. Bernard's Hospital in June of 1976 after he was found comatose in a motel room. He was diagnosed with "toxic psychosis" and placed in restraints. When he regained consciousness, Anderson proved to be uncooperative and was placed in additional restraints. He broke out of his restraints numerous times, including four times in the early morning hours of July 3, 1976. At approximately 6:45 a.m. that day, he was found outside on the ground after having apparently jumped from his fourth-floor window. He broke his spinal cord in the fall and was paralyzed below the waist.

Since 1977, Anderson has been under the care of the Department and resided in the Manteno Mental Health Center and Elgin Mental Health Center. Anderson received medical and psychological treatment from the Department.

The plaintiff sued St. Bernard's Hospital and others in 1990, alleging that their negligence resulted in Anderson's four-story jump and subsequent paralysis. In 1995, defendants agreed to pay plaintiff $720,000 in a settlement of the lawsuit. The circuit court then dismissed the suit with prejudice, but retained jurisdiction to adjudicate all liens against the settlement. The Department filed a timely notice of hospital lien in February 1996 pursuant to the Hospital Lien Act (Act) (770 ILCS 35/0.01 *et seq.* (West 1996)). In April 1996, the court ruled that the Department would be required to show a relationship between Anderson's injuries and the lien asserted. The Department filed a motion for clarification of the ruling which the court denied.

In July 1996, the trial court held an evidentiary hearing on plaintiff's motion to adjudicate the Department's lien. At the hearing, the Department attempted to establish a causal relationship between Anderson's injuries from the fall and his subsequent treatment provided by the Department. A psychiatrist who had treated Anderson

for a time at the Elgin facility testified for the Department that, in his opinion, Anderson's mental condition had deteriorated as a result of his fall from the hospital window. The psychiatrist asserted that Anderson's confinement to a wheelchair had increased his depression and psychosis and that, but for his confinement, Anderson would have recovered from his mental illness and resumed his place in the community. On cross-examination, the psychiatrist admitted that he did not know what Anderson's condition was prior to the time he treated him and acknowledged that, if Anderson had a psychosis prior to jumping out of the hospital window, the psychosis he observed while treating Anderson would not have been caused by injuries sustained in the fall. The psychiatrist also acknowledged that certain behavior by Anderson prior to and during his hospitalization at St. Bernard's, including suicide attempts, a drug overdose, breaking out of restraints and the jump from the window itself, would be consistent with a diagnosis that Anderson had a psychosis prior to his fall and subsequent paralysis.

A physician who had treated Anderson at Elgin also testified for the Department that Anderson's fall and subsequent paralysis necessitated his treatment for paralysis of the bladder, a related recurrent urinary tract infection, and pressure sores from constantly sitting in a wheelchair. On cross-examination, the doctor stated that he had no opinion as to whether Anderson's psychiatric condition began before or after he arrived at St. Bernard's Hospital. According to the doctor, Anderson's mental condition was the reason Anderson qualified for treatment in a state mental institution and the physical problems suffered by Anderson would not otherwise require long-term inpatient care. The doctor did not know the cost of the care provided to Anderson for problems related to the spinal cord injury.

A reimbursement officer from the Elgin facility testified that the Department arrived at its requested lien amount of $388,449.55 using a daily maximum rate chargeable for treatment in a state mental health facility and multiplying it by the amount of time Anderson had spent in state care. Because the calculated amount exceeded the remaining amount of the plaintiff's settlement after the plaintiff paid attorney fees and costs in the underlying action, the Department asked for the amount that remained after fees and costs were deducted. On cross-examination, the officer testified that the amount of the lien was based on the settlement amount and was not specifically related to the type of services provided, the nature of those services, the cost of the services or their relationship to the case that was settled.

In its ruling, the trial court first questioned the testimony of the

Department's psychiatrist who had found Anderson's mental problems to have been directly related to the fall. Because the psychiatrist had no knowledge of Anderson's mental history prior to the fall, the court found his conclusions to be "based on conjecture and speculation." The court noted that the Department arguably might be entitled to compensation for medical treatment provided to Anderson if he had been billed for the treatment. However, the treatment was billed at a daily rate that was the same whether a patient was being treated for purely psychiatric problems or psychiatric problems combined with physical ailments. Because the Department had not differentiated between medical and psychiatric treatment in its billing or identified specific charges, the court was unable to set a reasonable figure for the charges to which the Department may have been entitled. The court then adjudicated the Department's lien to zero.

The Department first contends that the circuit court erred by requiring it to prove a causal connection between Anderson's injuries from the fall which resulted in the settlement and the treatment the Department provided to Anderson.

■ In Public Act 89—280 (Pub. Act 89—280, § 20, eff. January 1, 1996), the legislature amended the relevant sections of the Act on May 16, 1995, to read as follows:

"§ 1. Every hospital rendering service in the treatment, care, and maintenance, of an injured person shall have a lien upon all claims and causes of action *** for the amount of its reasonable charges ***.

\* \* \*

§ 2. The lien of such hospital shall *** attach to any verdict or judgment secured in any action by the injured party based on the negligent or wrongful act, and to any money or property which may be recovered by compromise settlement, or in any action brought by such injured person on account of such claim or right of action." 770 ILCS 35/1, 2 (West 1996).

These changes were to become effective on January 1, 1996. However, on May 24, 1995, these sections were amended in Public Act 89—404. Among other changes, Public Act 89—404 eliminated all of the language in section 2 after the word "verdict," and added language providing that a lien shall attach to "any verdict, judgment, award, settlement, or compromise secured by or on behalf of the injured person." Pub. Act 89—404, eff. August 20, 1995. The Department contends that the legislature, by making this change, intended to allow a lien on any recovery made by a treated person regardless of whether the recovery was causally related to the injuries for which treatment was provided.

Whatever the legislature intended by Public Act 89—404 is irrelevant for our purposes because it was found unconstitutional for violating the single-subject rule of the Illinois Constitution. Ill. Const. 1970, art. IV, § 8(d); *People v. Reedy*, 186 Ill. 2d 1 (1999). Therefore, the changes made by Public Act 89—404 may not be relied upon to determine whether a causal connection is required. Nor can the language in Public Act 89—404 be used to ascertain what the legislature intended. Our analysis must focus only on the language of the Act as amended by Public Act 89—280.

■ Whether the Act as amended by Public Act 89—280 requires a causal connection is an issue of statutory construction. When determining the meaning of a statute, we must ascertain and give effect to the intent of the legislature. *Kunkel v. Walton*, 179 Ill. 2d 519, 533, 689 N.E.2d 1047, 1053 (1997). In this endeavor, the statutory language will be examined first as it is the best indication of the legislature's intent. *Kunkel*, 179 Ill. 2d at 533, 689 N.E.2d at 1053. Where the language is clear, it will be given effect without turning to other aids for construction. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994). Unambiguous terms that are not specifically defined must be given their plain and ordinary meaning. *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194-95, 595 N.E.2d 561, 562 (1992). Because the language of Public Act 89—280 is clear, we will not turn to other sources to determine legislative intent.

■ Section 2 of the Act provides that a hospital lien shall attach to any verdict or judgment obtained in any action by the injured person "based on the negligent or wrongful act." 770 ILCS 35/2 (West 1996). The quoted phrase is the key to the legislature's intent. Without this phrase, the statute would permit the lien to be attached to any verdict or judgment recovered by the injured person. However, the legislature chose to include this phrase and, therefore, it must have meaning. The phrase "the negligent or wrongful act" limits the situations in which a lien may be asserted to recoveries relating to the tortious act that injured the individual. To read the unambiguous words otherwise would render them superfluous and we would not be effectuating the legislators' intent. See also *Dollieslager v. Hurst*, 295 Ill. App. 3d 152, 691 N.E.2d 1181 (1998) (the language of the Physicians Lien Act (770 ILCS 80/2 (West 1996)), which contains language comparable to the Hospital Lien Act, requires a causal connection). Notably, this construction does not eliminate the hospital's ability to recover, but merely limits the situations when the hospital may recover by the imposition of a lien.

The Department also contends that, even if a causal connection is

required, it proved that the medical care it provided to Anderson was necessitated by his fall. Further, the Department maintains that it is not required by law to maintain records apportioning its charges among the various types of treatment it provides.

We will not disturb the court's finding that the Department established a causal connection for the physical treatment provided to Anderson, but that it failed to establish a connection for Anderson's psychiatric treatment. Further, we agree with the court that the Department failed to present evidence of the costs of the physical treatment. Even though the Mental Health and Developmental Disabilities Code (405 ILCS 5/5—106 (West 1996)) may not require the Department to distinguish its costs for different types of treatment, the Department was required to do so for purposes of the hearing. The hearing was held specifically for the purpose of determining whether the charges were related to Anderson's fall from the window. The Department had the opportunity to bring forth proof of the costs of Anderson's physical treatment, but failed to do so. Because this was the purpose for which the hearing was held, the Department cannot now request another opportunity to separate the charges. We find that the trial court did not err in adjudicating the lien to zero.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOURIHANE, P.J., and HARTMAN, J., concur.